UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
In re:                                                      **FOR PUBLICATION**

LEE ALEXANDER BRESSLER                                       Chapter 7

                                                            Case No. 18-13098 (MG)
                                          Debtors.
--------------------------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER DENYING MOTION TO EXTEND TIME TO OBJECT TO DISCHARGE

*A P P E A R A N C E S:*

ROSEN & ASSOCIATES PC
*Attorneys for Debtor*
747 Third Ave
New York, New York 10017-2803
By:    Sanford P. Rosen, Esq.

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS LLP
*Attorneys for Carbon Investment Partners LLC*
*and Carbon Master Fund LP*
200 West 41st St, 17th Floor
New York, New York 10036-7203
By:    Tracy L. Klestadt, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Carbon Investment Partners LLC and Carbon Master Fund LP (together, "Carbon") move

to extend the deadlines to object to the debtor Lee Alexander Bressler's ("Bressler") discharge of

Bressler's alleged debt to Carbon under section 523(c) of the Bankruptcy Code, and, more

broadly, to Bressler's discharge of any prepetition debt under section 727 of the Code.

("Motion," ECF Doc. # 54.)  Bressler's counsel opposes the Motion, arguing that Carbon's time

to object to discharge, or to seek an extension of time to do so, already expired.  The Motion

charges that Bressler's counsel orally agreed before the deadline expired to extend Carbon's time to object to a discharge, but Bressler's counsel never signed and returned a stipulation extending Carbon's time.  Bressler's counsel unapologetically admits that he agreed but says that Carbon's counsel failed to follow-up and get a stipulation signed before the time expired.  Therefore, Bressler's counsel argues that the Court cannot grant the requested relief.

It is important to note that the Chapter 7 Trustee's time to object to Bressler's discharge under section 727(c) was extended by Stipulation and Order entered on March 6, 2019 (ECF Doc. # 78) to and including May 15, 2019, and therefore has not expired.  The Chapter 7 Trustee has continued investigating whether to seek to deny Bressler's discharge, and indeed Carbon's counsel is cooperating with the Chapter 7 Trustee and his counsel in that investigation.

The Court needs to address the following issues:

(1) Under the Bankruptcy Code and Bankruptcy Rules, has Carbon's time to object to Bressler's discharge, or to obtain an extension of time to do so, expired?

(2) Assuming the time has expired, does the Court have the authority to extend Carbon's time to object to Bressler's discharge on any equitable grounds?

(3) Assuming that Carbon's time to object to discharge has expired, under what circumstances, if any, may Carbon still object to Bressler's discharge?

The answer to the first question is clearly stated in the Code—the deadline to object to a discharge is 60 days after the *first date set* for the meeting of creditors under section 341, and any extension of the deadline to object to discharge must be sought from the Court before that deadline, or any already extended deadline, expires.

The answer to the second question is that because any extension of the deadline to object to discharge must be sought from the Court before the deadline expires, a verbal agreement

2

between counsel without a timely application to the Court before the deadline expires, cannot

provide a basis to extend the deadline.

The answer to the third question can be found in Bankruptcy Rule 4004(b)(2), which

permits a motion to extend the time to object to discharge after the time for objection has expired

if "(A) the objection is based on facts that . . . would provide a basis for revocation [of a

discharge] under § 727(d) of the Code, and (B) the movant did not have knowledge of those facts

in time to permit an objection."  FED. R. BANKR. P. 4004(b)(2).  Carbon's Motion is not based on

that rule and whether Carbon will be able to satisfy the high threshold set in the rule is unknown

at this time.

For the reasons explained below, Carbon's Motion is **DENIED WITHOUT**

**PREJUDICE.**

## I.   BACKGROUND

Bressler filed his Chapter 7 petition on October 12, 2018.  ("Petition," ECF Doc. # 1.)

Before Bressler's bankruptcy filing, Carbon filed a civil suit against Bressler in the District Court

of Oklahoma County, Oklahoma, in an action styled, *Carbon Investment Partners, LLC, et al. v.*

*Lee A. Bressler*, Case No. CJ-2018-1211.  (ECF Doc. # 14-3.)  The civil suit alleges that Bressler

committed fraud and breached his fiduciary duty by making unauthorized trades while working as

Carbon's Chief Investment Officer and portfolio manager.  (*Id.* ¶¶ 6, 99-111)  The trades

allegedly resulted in the complete loss of an investment fund and "massive" losses to investors.

(*Id.* ¶ 4.)

### A.  The Arbitration Proceeding

On March 30, 2018, Carbon filed an arbitration proceeding against Bressler asserting the

same claims as those in the district court action.  (ECF Doc # 14-4.)  On December 7, 2018, this

Court entered an order modifying the automatic stay "to permit the AAA Arbitration to proceed

until such time as a written award is rendered which decides its outcome[.]" (ECF Doc. # 38, at

1.)  The hearing on the merits in the arbitration was conducted March 18 through March 22, 2019.

(ECF Doc. # 102-1, at 1.)  The arbitrator issued a final award on April 30, 2019.  (*Id*. at 24.)  The

final award sustains Carbon's claims, finding by clear and convincing evidence that Bressler

breached his fiduciary duties to Carbon and committed actionable fraud in his dealings with

Carbon.  (*Id*. at 5.)  Those findings are supported by evidence that Bressler opened secret accounts

to conceal unauthorized trades, secured by Carbon's funds, and that the unauthorized trades

exceeded Carbon's total assets under management by up to 3,000%.  (*Id*. at 12-16.)  When the

trades proved unsuccessful, not only did they wipe out the fund, but resulted in a multi-million-

dollar deficiency.  (*Id*. at 16.)

The arbitrator's award describes Bressler's conduct as "willful [and] without remorse[.]"

(*Id*. at 6.)  The arbitrator awarded Carbon approximately $16.8 million, including approximately

$12.7 million in compensatory damages and $2.5 million in punitive damages.  (*Id*. at 5.)  The

arbitration award has not yet been confirmed by any court.

**B.  The 341 Meeting**

Carbon filed the Motion to extend its time to object to Bressler's discharge on February

4, 2019, prior to the decision in the arbitration proceeding.  (ECF Doc. # 54.)  Carbon seeks to

extend the time to object until May 15, 2019 (the current deadline for the Chapter 7 Trustee to

object to a discharge) to file (a) an objection to the dischargeability of Carbon's debt owed by

Bressler under section 523(c) and Bankruptcy Rule 4007 and (b) an objection to Bressler's

discharge under section 727 and Bankruptcy Rule 4004,.

The date of Bressler's section 341 meeting (the "341 Meeting") determines Carbon's

deadline to object to a discharge, or to obtain an extension of time to do so.  The Clerk of the

Court initially scheduled the 341 Meeting for November 16, 2018.  A Notice of the 341 Meeting

4

reflects this date. ("Notice," ECF Doc. # 4 ¶ 7.) The Notice also set the deadline to object to

discharge as January 15, 2019. (Id. ¶ 9.) The Notice was mailed to Carbon via first class mail at

316 N.W. 61st St., Oklahoma City, OK 73118-7418 on October 17, 2018. (ECF Doc. # 6, at 3.)

Carbon does not deny receiving this Notice.

On November 14, 2018, the 341 Meeting was adjourned to December 7, 2018. (ECF

Doc. # 26.) According to Bressler's counsel, "[t]he Trustee convened the 341 Meeting on

December 7, 2018, which [Carbon's] bankruptcy counsel attended and actively participated in,

by questioning [Bressler] regarding certain of his financial affairs, some of which questions

related to the pending arbitration proceeding [Carbon] had commenced prior to the [Petition] and

which [Carbon] had obtained stay relief to prosecute." (ECF Doc. # 62 ¶ 6.)

The following is a summary of the important dates in this Case:

- October 12, 2018—Bressler files Petition
- November 16, 2018—first date set for 341 Meeting
- December 7, 2018—adjourned date for 341 Meeting
- January 15, 2019—deadline to object to discharge as reflected in the Notice
- February 4, 2019—filing of Motion to extend the deadline to object
- February 5, 2019—60 days after the 341 Meeting was actually held.

Carbon argues that its deadline to object to Bressler's discharge was February 5, 2019, 60

days after the 341 Meeting was actually held, rather than January 15, 2019, 60 days after the first

date set for the 341 Meeting. If Carbon is correct, its February 4, 2019 filing of the Motion was

timely. If the 60-day period for objecting to a discharge is calculated from the date the 341

Meeting was initially set, the Motion is untimely. As the Court concludes below, unfortunately

for Carbon, the deadline to object to discharge, or to obtain an extension to do so, must be

calculated from the first date set for the 341 Meeting, even if the date of the meeting is adjourned

to a later date. Carbon's time to object therefore expired on January 15, 2019, so its Motion is

untimely.

### C.  Carbon's Motion

Carbon's counsel argues that there is a split of authority whether the deadline to file a complaint objecting to discharge expires 60 days after the first date set for the 341 Meeting, or 60 days after the meeting actually takes place.  (Motion ¶ 6.)  Carbon acknowledges that a majority of courts interpret the deadline to be the earlier of the two dates.  (*Id*. ¶ 7.)  Carbon nonetheless urges the Court to adopt the minority position, so that it may now file a complaint objecting to discharge.  Carbon references its "good faith" reliance on an alleged oral agreement with Bressler's counsel as an additional reason for extending the deadline to a later date.  (*Id*. ¶ 18.)

### D.  Bressler's Objection

Bressler's counsel acknowledges that he agreed to stipulate to extend the deadline to object to discharge before the deadline expired, but argues that Carbon had the burden to either "obtain the stipulation" or timely move for an extension, both of which it failed to do.  (ECF Doc. # 62 ¶ 21.)  Bressler's counsel argues that the Bankruptcy Rules require Carbon to obtain an extension of time within 60 days of the first date for which the 341 Meeting was scheduled, which was not done, and that he never agreed to stipulate to an extension after the 60-day period expired. Therefore, Bressler's counsel urges the Court to deny the Motion.

### E.  Carbon's Reply

Carbon's counsel's reply holds steadfast to its position that the deadline to file objections is 60 days after the meeting of creditors is actually held, rather than the date it was first scheduled. ("Reply," ECF Doc. # 65 ¶¶ 5-10.)  Counsel also advances three other arguments: first, that counsel for Carbon and Bressler entered into an oral agreement to extend the deadline that is binding and enforceable (*Id*. ¶¶ 11-19); second, that Bressler is now equitably estopped from arguing for a different deadline (*Id*. ¶¶ 20-27); and, third, that this Court has the power to equitably toll the deadline due to misconduct by Bressler (*Id*. ¶¶ 28-39).

6

## II. **DISCUSSION**

Under section 523(c) of the Bankruptcy Code, a debtor is discharged from debts—even debts based on fraud, false representations, defalcation while acting in a fiduciary capacity, or willful and malicious injury (all providing a basis to deny a discharge under section 523(a))—unless a creditor requests that such debts be excepted from the discharge. 11 U.S.C. § 523(c). Objections to discharge must be brought in an adversary proceeding. FED. R. BANKR. P. 7001(6). The deadline to file an adversary proceeding seeking to deny a discharge is found in Bankruptcy Rule 4007. Rule 4007 provides that "a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after *the first date set* for the meeting of creditors under §341(a)." FED. R. BANKR. P. 4007(c) (emphasis added).

A creditor may object to a discharge for particular debts under section 523, or the creditor may object to a debtor's discharge more broadly. Section 727 contains numerous reasons for denial of *any* discharge of debts. 11 U.S.C. § 727(a). Objections under section 727 also require an adversary complaint that "shall be filed no later than 60 days after *the first date set* for the meeting of creditors under § 341(a)." FED. R. BANKR. P. 4004(a) (emphasis added).

Bankruptcy Rules 4004(b) and 4007(c) permit a party in interest, including a creditor, a Chapter 7 trustee or the U.S. Trustee, to seek an extension of time to object to a discharge based on sections 523 or 727, by filing a motion seeking such relief, or more frequently by stipulation between the debtor and the parties seeking the extension, so long as the court either grants the motion or approves the stipulation. But the motion or stipulation must "be filed before the time [to file a complaint under §523(c) and § 727] has expired." FED. R. BANKR. P. 4004(b)(1) & 4007(c).[1]

---

[1]    Local Bankruptcy Rule 9006-2 provides an automatic extension "when a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Bankruptcy Code, Bankruptcy Rules, Local

**A.  Carbon's Motion to Extend the Time to Object to Discharge is Untimely**

Despite the clear language in the rules, Carbon's counsel argues that the deadline to

object should not be based on the first date set for the 341 Meeting, but rather the date the

meeting actually took place.  Carbon cites three cases where courts interpreted the rules to mean

that the 60-day deadline begins to run from the date a creditors' meaning is actually held.

(Motion ¶ 8) (citing to *Peerless Insurance Co. v. Miller* (*In re Miller*), 182 B.R. 507, 509–10

(Bankr. S.D. Ohio 1995); *St. Pierre v. Little* (*In re Little*), 161 B.R. 164, 168 (Bankr. E.D. La.

1993); *Fair City Enterprises, Inc. v. Keefe* (*In re Keefe*), 48 B.R. 717 (Bankr. D.S.D. 1985)).

Carbon argues these courts found "that it is logical for the deadline to occur after the creditors'

meeting so creditors have time to file objections based on information obtained from the debtor's

examination."  (*Id.*)

Carbon's position is untenable, however.  The cases cited by Carbon all pre-date the 1999

amendments to the applicable rules.  Before 1999, Bankruptcy Rules 4004 and 4007 provided

that the deadline was "no later than 60 days following the first date set for the meeting of

creditors *held pursuant to* § 341(a)."  FED. R. BANKR. P. 4004(a) & 4007(c) (amended 1999)

(emphasis added).  The 1999 amendments removed the phrase "held pursuant to" and replaced it

with the word "under."  According to the Advisory Committee notes, the purpose of the change

was to:

> [C]larify that . . .  the deadline for filing a complaint objecting to
> discharge under § 727(a) [and the dischargeability of a debt under
> § 523(c)] is 60 days after the first date set for the meeting of
> creditors, *whether or not the meeting is held on that date.  The time
> for filing the complaint is not affected by any delay in the
> commencement or conclusion of the meeting of creditors*.

Bankruptcy Rules, or order of the Court," provided that a return date of the motion is promptly scheduled.  NYSB
LOCAL BANKRUPTCY RULE 9006-2.  Therefore, the motion to extend time may be filed before the deadline expires
even though the Court does not rule on the motion until after the time expires.

FED. R. BANKR. P. 4004 & 4007 advisory committee's note to 1999 amendment (emphasis added).  As Collier's explains, "by deleting the word *held . . .* [t]he drafters presumably opted for the absolute certainty of such a fixed date rather than a date which might change one or more times depending upon the ultimate scheduling of the creditors' meeting."  9 COLLIER ON BANKRUPTCY ¶ 4007.04 (16th ed. 2019).  Advisory Committee notes, although not binding, are highly persuasive and are afforded substantial weight in interpreting federal rules.  *See, e.g.*, *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005); *see also In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009); *Burnley v. City of San Antonio*, 470 F.3d 189, 195–97 (5th Cir. 2006).  The changes made to Rules 4004 and 4007 and accompanying advisory notes render Carbon's interpretation unavailing.

Moreover, even if this Court were faced with the pre-amendment language, it would not come to a different conclusion.  Carbon's interpretation ignores the unambiguous language of the Rules.  Both Rules state the deadline is 60 days from *the first date set*.  There is no other logical interpretation of this phrase than the date for which the meeting was initially scheduled.  If the drafters meant something different, they easily could have omitted the phrase "the first date set" and it would be clear that the time frame does not begin to run until the creditors' meeting is actually held.

A cannon of statutory interpretation is that every word of a statute should be given effect, if possible.  *Chicksaw Nation v. United States*, 534 U.S. 84, 94 (2001).  Courts may, however, reject words as mere surplusage if inadvertently inserted or repugnant to the rest of the statute.  *Id*.  While this opinion deals with the interpretation of Bankruptcy Rules rather than a statute, the same principles apply.  The phrase "the first date set" is not surplusage.  It was not inadvertently inserted as it has a distinct purpose—establishing the deadline for when objections to discharge

must be filed.  Nor is it repugnant.  The phrase does not conflict with any other section of the Code or Rules.  Therefore, the phrase "the first date set" should be given effect, meaning the deadline to object to discharge runs from the first date ever established for the initial meeting of creditors, not when the meeting is held.

In addition, the "logical" interpretation advanced by Carbon ignores the fact creditors may request an extension of time to file complaints.  That is the remedy available when a creditors' meeting is delayed, and a creditor requires additional time to determine whether it will object to discharge.  *See Datson v. Cote (In re Datson)*, 197 B.R. 1, 4 (D. Me. 1996) ("[The] proper remedy provided by Rules 4004(b) and 4007(c) is for the creditor to file a motion seeking an extension of the deadline *before the expiration of the deadline*." (emphasis added)).  Given that a creditor can seek to extend the deadline to object, the interpretation advanced by Carbon loses its force because the rules already provide a solution for the problem the minority interpretation intends to avoid.

The Court's conclusion today comports with the interpretation adopted by a majority of courts that have addressed the issue.  As Carbon candidly acknowledges, "[t]he majority of courts interpret the rule to mean that the deadline for filing objections occurs 60 days after the date the meeting of creditors is scheduled, *regardless of whether the meeting actually takes place on that date*."  (Motion ¶ 7) (emphasis added) (citing *Kelly v. Gordon (In re Gordon)*, 988 F.2d 1000, 1001 (9th Cir.1993); *DeLesk v. Rhodes (In re Rhodes)*, 61 B.R. 626, 629 (9th Cir. BAP 1986); *In re Datson*, 197 B.R. at 4; *Gatchell v. Kise (In re Kise)*, 84 B.R. 36, 37 (Bankr. E.D. Pa. 1988); *In re Manuel*, 67 B.R. 825, 826 (Bankr. E.D. Mich. 1986); *In re Betinsky*, 58 B.R. 814, 815 (Bankr. E.D. Pa. 1986).

Moreover, it comports with Supreme Court precedent that has made clear that deadlines in the Bankruptcy Rules mean what they say. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 643-644 (1992) (holding that a Chapter 7 trustee could not contest the validity of claimed exemptions after the 30-day period for objecting had expired and no extension had been obtained). "Deadlines may lead to unwelcome result, but they prompt parties to act and they produce finality." *Id.* at 644.

The Court today sides with the majority of courts in holding that the deadline to file an objection, or to seek an extension, expires 60 days after the first date set for the 341 Meeting. While Carbon may feel it has been duped by Bressler's counsel, Carbon's counsel was aware that it needed to extend the deadline as far back as December 20, 2018, 26 days before the deadline expired. (ECF Doc. # 54-2). Extensions are most often resolved by stipulation and order, as appears to have been promised here. Carbon, however, could have easily filed a motion to extend its time to object to discharge. It did not do so. Say what one will about the conduct of Bressler's counsel, he did no more than protect the interests of his client. The result is that Carbon's time to object to Bressler's discharge has expired unless Carbon is able to make use of Bankruptcy Rule 4004(b)(2). Thus, as of now at least, Carbon is time-barred in seeking to deny Bressler's discharge. Of course, the Chapter 7 Trustee may still file an adversary proceeding to deny Bressler a discharge under section 727(c).

**B.  Carbon is not entitled to equitable relief**

Notwithstanding the deadline for objecting to discharge, Carbon argues equitable considerations support extending its time to object to Bressler's discharge.

First, Carbon argues that Bressler's counsel agreed to extend the deadline, and that agreement should be "binding and enforceable." (Reply ¶ 11-17.) Carbon cites Second Circuit caselaw as to whether a binding agreement was reached in the context of settlement of a contract

11

dispute. *See Winston v. Mediafare Entm't Corp.*, 777 F.2d 78 (2d Cir. 1985). The problem with

Carbon's argument is that while any purported settlement agreement may be binding and

enforceable between the parties, extending the deadline by motion or stipulation requires

approval by the Court. As the court in *Schunck v. Santos (In re Santos)*, 112 B.R. 1001 (B.A.P.

9th Cir. 1990) stated:

> [A] motion to extend the bar date must be filed prior to the
> expiration of the bar date and *only the court may extend the
> deadline*. To determine otherwise would allow the parties to
> determine among themselves to what extent the bar date would be
> extended and would remove the court control over extensions
> which is mandated by the rules.

*Id*. 1007–08 (emphasis added). Since only the Court has the authority to extend the deadlines, a

purported stipulation, without court approval, is ineffectual.

Carbon next argues Bressler is equitably estopped from opposing the Motion. (Reply ¶

20-27.) This argument falls short for two reasons. First, even were that true, nothing stops this

Court, because of the late filing, from denying Carbon's Motion *sua sponte*, even if Carbon's

Motion was unopposed. Second, equitable estoppel requires reasonable reliance. *See Higgins v.

Erickson (In re Higgins)*, 270 B.R. 147, 158 (Bankr. S.D.N.Y.2001) ("To equitably estop a party

from interposing the defense that an action is time-barred, 'a movant must show that (1) the non-

movant made a definite misrepresentation of fact, and had reason to believe that the [movant]

would rely on it; and (2) the [movant] reasonably relied on that misrepresentation to his

detriment.'") (quoting *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995)).

When faced with two choices, whether to protect an approaching deadline by filing a motion to

extend or let the deadline pass in reliance on an unfulfilled promise by an adversary, the

reasonable path is the conservative one—to protect the deadline. This is particularly true when

an extension to the deadline requires court approval.  It was the responsibility of Carbon's

counsel, not Bressler's counsel, to protect Carbon's right to object to a discharge.

Other courts faced with this issue have come to the same conclusion.  In *In re Santos*, 112

B.R. at 1007, the court stated, "[a] plaintiff cannot reasonably rely upon the defendants'

representation that they would extend a deadline when the applicable rules clearly provide that a

motion to extend the bar date must be filed prior to the expiration of the bar date and only the

court may extend the deadline."  Similarly, in *Dombroff v. Greene (In re Dombrof)*, 192 B.R.

615 (S.D.N.Y. 1996), the court held that a debtor's alleged agreement to extend time for a

trustee's filing of its objection to the debtor's discharge did not estop the debtor from asserting

the time limitation against the trustee.  *Id*. at 622.  The *Dombroff* court stated:

> The trustee was obligated to determine that the court had received
> and approved the stipulation before he reasonably could rely on the
> extension it proposed. . . .  While the trustee may have relied on
> [debtor's] counsel, that reliance was unreasonable as a matter of
> law where the trustee had over a week to determine whether the
> court had granted the extension or, indeed, whether the stipulation
> in fact had been filed with the court.  He failed to do so.

*Id.*

This Court agrees with the rationale of both cases.[2]  Therefore, even if equitable estoppel

is an available defense, Carbon loses on the merits.

Carbon's third, and final argument, carries the most weight.  It argues that the Court

should equitably toll the deadline due to Bressler's conduct or alleged misconduct.  In addition to

agreeing to an extension of time to object to discharge, Carbon alleges that Bressler provided

---

[2]   Local Bankruptcy Rule 9006-2, discussed *supra* n.1., extending a deadline if the motion is filed before the
deadline expires, was added to the Local Rules in 2013, "as an exercise of the Court's discretion to extend time
under Bankruptcy Rule 9006(b) and to obviate the need for a 'bridge order' in certain circumstances."  NYSB
LOCAL BANKRUPTCY RULE 9006-1, Comment.  Therefore, the statement in *Dombroff* that the extension had to be
granted before the expiration of the deadline is no longer correct if the motion to extend the deadline is filed before
the deadline expires.

vague and incomplete responses at the 341 Meeting, frivolously objected to Carbon's Rule 2004

discovery, and willfully violated multiple discovery orders in the arbitration case, including

spoliation of evidence by deleting evidence from his laptop computer. (Reply ¶¶ 34-37.) Some

of these allegations could support a motion under Rule 4004(b)(2) to extend Carbon's time to

object to discharge, even if Bressler opposed the motion. For example, Carbon could be entitled

to extend the time if Bressler withheld information about property of the estate, or the estate's

entitlement to such property, facts that have been alleged by the Chapter 7 Trustee in a recently

filed adversary proceeding against Bressler's wife. *See* 11 U.S.C. § 727(d)(1) & (2). In the

adversary complaint filed in this Court on May 2, 2019, the Trustee alleges that Bressler was the

sole holder of a Santander Bank checking account, which Bressler failed to disclose in this

Bankruptcy Case, and from which Bressler transferred nearly $1 million to purchase property

that was placed solely in the name of his wife. (*See* AP 19-01127, ¶¶ 18–27.)

Carbon cites to four cases to support the proposition that the Rules 4004 and 4007

deadlines can be tolled due to actions by a debtor. First, in *In re Albini*, 2004 WL 943908, at *1

(Bankr. D. Conn. Mar. 5, 2004), a bankruptcy court reopened a petition to permit a creditor,

which had been served with notice of the 341 meeting, to file a complaint objecting to the

dischargeability of its debt. *Id.* at *1. This was done after the deadline to object had expired.

The court reopened the case, however, because the debtor provided inadequate creditor contact

information in its creditor matrix, resulting in notices being sent to a creditor's generic corporate

address, instead of a more particularized address that the debtor was aware of. *Id*. at *5. The

debtor also failed, in an ongoing civil case between itself and the creditor, to give notice of the

pendency of the bankruptcy proceeding. *Id.* The overall tenor of the *Albini* case was that the

debtor was deceitful in notifying the creditor of the ongoing bankruptcy case and consciously

attempted to promote inaction by the creditor.  The court reopened the petition and tolled the

deadline, permitting a late filed complaint.  *Id.* at \*6.

Next, in *Sunflower Bank N.A. v. Otte* (*In re Otte*), 2004 WL 2187175, at \*1 (Bankr. D.

Kan. Aug. 3, 2004), a bankruptcy court denied a debtor's motion to dismiss an adversary

complaint that was filed by a bank after the time to object to discharge had expired..  The debtor

in that case personally guaranteed loans made to a company in which the debtor was the majority

shareholder and president.  The loans were secured by inventory of the company, including

fertilizer and chemicals.  After the debtor filed its petition, however, the bank learned the

collateral was mislabeled, watered down, contaminated, and worth only a fraction of what was

represented to it by the company and debtor.  The bank alleged in its adversary complaint that

the debtor fraudulently caused the value of the inventory to be overstated to the bank, resulting in

the bank extending credit to the company.  *Id.* at \*1.  The court in that case did not toll the

deadline but denied the motion to dismiss the late adversary complaint, and stated that if the

bank's allegations were true and absent any evidence that the bank should have discovered the

fraud sooner, the bank's delay in commencing the adversary proceeding should be excused.  *Id.*

at \*2.

A third case, *DeAngelis v. Rychalsky* (*In re Rychalsky*), 318 B.R. 61 (Bankr. D. Del.

2004), involved a debtor that allegedly failed to maintain records regarding a transfer of

securities that occurred within a year of the petition date..  On that basis, the Chapter 7 Trustee

timely filed an objection seeking denial of discharge under section 727(a)(3).  *Id.* at 62.  During

discovery in the adversary proceeding, however, the Trustee learned that the debtor did not

schedule all creditors, misidentified some secured creditors as unsecured creditors, and failed to

disclose all his assets including two pending claims and a vehicle.  *Id.* at 64.  Upon learning this

15

information, the Trustee filed a motion to amend the complaint to add ten counts pursuant to

section 727(d)(1) related to the newly discovered information, which the bankruptcy court

granted, even though it was after the Rule 4004 deadline.  The bankruptcy court tolled the

deadline, however, finding that the debtor "should not be allowed to profit by his failure to

disclose information uniquely within his possession[.]"  *Id.*.[3]

Fourth, in *Nardei v. Maughan* (*In re Maughan*), 340 F.3d 337 (6th Cir. 2003), the Sixth

Circuit affirmed a decision by a bankruptcy court that equitably tolled the Rule 4007(c) deadline.

The bankruptcy court granted a late extension request after the debtor failed repeatedly to

provide documents ordered produced by the bankruptcy court, despite promises by the debtor to

do so.  *Id*. at 344.  The bankruptcy court pointed to the dilemma of a creditor that has to decide

whether to object to discharge but also is obligated under Rule 9011 to investigate fully before

commencing an adversary complaint, as reason to toll the deadline.  *Id*.  The Sixth Circuit

affirmed, holding that "[t]he bankruptcy court did not abuse its discretion by using its equitable

power to ensure that the debtor was not permitted to frustrate the ability of a litigant to comply

with applicable law by failing or neglecting to adhere to lawful orders of the Court."  *Id*. (internal

quotations omitted).

The Court finds the facts of *Albini, Otte, and Rychalsky* distinguishable and the rationale

of *Maughan* unpersuasive.  In *Albini*, the debtor seemingly tried to hide the ball from the

creditor, so that it would miss the deadline to object.  Bressler here engaged in no such conduct

and Carbon was given proper notice of the deadline to object.  Regarding *Otte* and *Rychalsky*,

---

[3]    *Rychalsky* was decided prior to the 2011 amendment to Rule 4004, which added the previously discussed subdivision (b).  *See* FED. R. BANKR. P. 4004 advisory committee's note to 2011 amendments.  Had the current version of Rule 4004 been in force at the time of the *Rychalsky* decision, the court may not have had to toll the deadline because, under the current rule, the court may have been able to extend it.

both involved objecting parties who learned new information which formed the basis for their

objections after the deadline to object had passed.  In contrast, Carbon was aware of Bressler's

alleged fraud and fiduciary breaches and had commenced both a district court action and an

arbitration proceeding prior to Bressler filing his bankruptcy petition.  While Carbon also alludes

to discovery violations by Bressler in the arbitration proceeding that occurred post-deadline

(ECF Doc. # 85-2), Carbon fails to explain how Bressler's recalcitrance forms an independent

basis for a denial of discharge under section 523(a) or 727, and it has not so far sought relief

under Bankruptcy Rule 4004(b)(2).  If Carbon believes that recently discovered facts support an

extension of time to object to discharge under Bankruptcy Rule 4004(b)(2), it will need to file a

motion seeking such relief.

    In *Maughan*, the circuit court acknowledges certain situations where a creditor may have

insufficient information to file a complaint, but, respectfully, the Court believes it dismisses too

quickly the fact that courts can grant creditors additional time, if asked.  "[E]quitable tolling is a

remedy reserved for extraordinary or exceptional circumstances." *Smith v. McGinnis*, 208 F.3d

13, 17 (2d Cir. 2000).  Although the Court does not applaud the alleged conduct of Bressler's

counsel, the Court finds the circumstances here are not extraordinary enough to warrant tolling,

when Carbon had the option to file a motion seeking to extend the deadline, but failed to do so in

a timely fashion.

    This conclusion is consistent with decisions by courts in this district and others that view

equitable tolling more skeptically.  In *Higgins v. Erickson* (*In re Higgins*), 270 B.R. 147 (Bankr.

S.D.N.Y. 2001), another judge of this court declined to equitably toll the deadline for filing

nondischargeability complaints where the motion to extend time was filed after the 60-day

deadline.  The court explained:

> The rationale behind the doctrine of equitable tolling is that a statute of limitations should not start running until the plaintiff is aware she may have a cause of action. *See Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir.1985). Federal courts have exercised this doctrine where the movant had been misled or where evidence had been fraudulently concealed but have not been so generous where one does not act diligently in protecting his legal rights. *See State of New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065, 1083 (2d Cir.1988) (tolled statute of limitations where plaintiff acted diligently and failed to discover existence of claim as a result of defendant's intentional fraudulent concealment); *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."). . . . [A] movant must show that he has not "slept on his rights" before the court will use its equity power to toll the limitations period. *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946).

*Id.* at 158.

Thus, while the *Higgins* court acknowledges that equitable tolling could apply, it should not in these factual circumstances. Here, Carbon was aware of the deadline but failed to file a motion to extend its time to object. The applicable rules are clear. The deadline was not concealed by Bressler or his counsel.

The Ninth Circuit Bankruptcy Appellate Panel in *In re Santos*, took an even stronger position than the court in *Higgins*, rejecting equitable tolling altogether. The Panel stated:

> [W]e believe that the plain language of these rules precludes the application of the doctrine of equitable tolling. The essence of the doctrine of equitable tolling is that a limitations period does not run against a plaintiff who is unaware of his cause of action and the doctrine is invoked when the defendant conceals or makes it impossible for the plaintiff to discover the facts underlying his cause of action.

*In re Santos*, 112 B.R. at 1006–07 (internal citations omitted). The Panel referenced the underlying purposes of the Bankruptcy Rules—the fresh start, prompt administration, finality and certainty of relief—as reasons to reject the doctrine. The Panel was concerned that applying equitable tolling would significantly impair those purposes because creditors could attempt to

object to discharge years after the time to file a complaint expired, and that the better approach is

for bankruptcy courts to liberally grant timely filed requests for extensions to the bar date.  *Id.*

The Court agrees that extensions should be granted liberally.  However, the requests need

to be timely made.

### III.  CONCLUSION

For the reasons explained above, the Court concludes Carbon's Motion to extend the

deadline to object to Bressler's discharge of its debt is untimely and that equity does not compel

the Court to permit a late filing.  The Motion is, therefore, **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Dated:    May 10, 2019
          New York, New York


          ____*Martin Glenn*_____
                 MARTIN GLENN
          United States Bankruptcy Judge