**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

In re:

LEE ALEXANDER BRESSLER,

Debtor.

------------------------------------------------------------------------x

**FOR PUBLICATION**

Chapter 7

Case No. 18-13098 (MG)

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND**
**DENYING IN PART MOTION TO EXTEND TIME TO OBJECT TO DISCHARGE**

*A P P E A R A N C E S :*

SILVERMANACAMPORA LLP
*Attorneys for Debtor*
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
By:    Kenneth P. Silverman, Esq.
       Ronald J. Friedman, Esq.

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS LLP
*Attorneys for Carbon Investment Partners LLC*
*and Carbon Master Fund LP*
200 West 41st St, 17th Floor
New York, New York 10036-7203
By:    Tracy L. Klestadt, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is Carbon Investment Partners, LLC and Carbon Master Fund, L.P.'s

(collectively, "Carbon") motion for an extension of time to object to the discharge of the debtor

Lee Alexander Bressler ("Bressler").  ("Motion," ECF Doc. # 111.)  Previously, Carbon moved to

extend the deadlines to object to Bressler's discharge under section 727(a) of the Bankruptcy

Code and to the dischargeability of Bressler's debt to Carbon under section 523(c) of the Code.

Bankruptcy Rules 4004(a) and 4007(c) require those extension requests to be made no later than

60 days after the first date set for the meeting of creditors under section 341(a). The first date set

for the meeting of creditors in Bressler's case was November 16, 2018, meaning the extension

requests needed to be made by January 15, 2019. Carbon's request, however, was not filed until

February 4, 2019. As a result, this Court issued a memorandum opinion and order denying

Carbon's request, finding it was untimely. *See In re Bressler*, 2019 WL 2070733 (Bankr.

S.D.N.Y. May 10, 2019), *reconsideration denied,* 2019 WL 2382947 (Bankr. S.D.N.Y. June 4,

2019). Carbon now seeks an extension under Rule 4004(b)(2) relying on newly learned facts that

allegedly form the basis for an objection to Bressler's discharge. For the reasons stated below, the

Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

Bressler filed a voluntary chapter 7 petition on October 12, 2018. ("Petition," ECF Doc. #

1.) Bressler is a former portfolio manager and Chief Investment Officer for Carbon.

("Arbitration Award," ECF Doc. # 102-1, at 2.) Prior to the Petition, Carbon filed a civil suit

against Bressler in the District Court of Oklahoma County, State of Oklahoma, in an action styled,

*Carbon Investment Partners, LLC, et al. v. Lee A. Bressler*, Case No. CJ-2018-1211. (ECF Doc.

# 69 ¶ 10.) The civil suit alleges that Bressler committed fraud and breached his fiduciary duty by

making unauthorized trades, which resulted in substantial losses to Carbon. (*Id.*) On March 30,

2018, Carbon filed an arbitration proceeding against Bressler, which also asserted claims for fraud

and breach of fiduciary duty. On December 7, 2018, this Court modified the automatic stay "to

permit the AAA Arbitration to proceed until such time as a written award is rendered which

decides its outcome . . . ." ("Order," ECF Doc. # 38.) The hearing on the merits in the arbitration

was conducted March 18 through March 22, 2019. (Arbitration Award at 1.) The arbitrator

issued a final award on April 30, 2019. (*Id.* at 24.) The final award sustains Carbon's claims,

2

finding by clear and convincing evidence that Bressler breached his fiduciary duties to Carbon and committed actionable fraud in his dealings with Carbon. (*Id.* at 5.) Those findings are supported by evidence that Bressler opened secret accounts to conceal unauthorized trades, secured by Carbon's funds, and that the unauthorized trades exceeded Carbon's total assets under management by up to 3,000%. (*Id.* at 12–16.) When the trades proved unsuccessful, not only did they wipe out the fund, but they resulted in a multi-million-dollar deficiency. (*Id.* at 16.)

The arbitrator's award describes Bressler's conduct as "willful [and] without remorse . . . ." (*Id.* at 6.) The arbitrator awarded Carbon approximately $16.8 million, including approximately $12.7 million in compensatory damages and $2.5 million in punitive damages. (*Id.* at 5.) On June 7, 2019, Judge Don Andrews of the Oklahoma County District Court entered orders confirming the arbitration award and granting judgment in conformity therewith. ("Order and Judgment," ECF Doc. # 132, Ex. A-B.)

### A.    Carbon's Prior Attempt to Extend the Deadline to Object to Discharge

While the arbitration case was pending, Carbon filed a motion seeking an extension of time to object to discharge of debt under section 523(c) of the Bankruptcy Code or discharge under section 727 of the Bankruptcy Code. ("Motion to Extend," ECF Doc. # 54.) The Motion to Extend was filed February 4, 2019, and it sought an extension of time to object to discharge until May 15, 2019. (*Id.* at 1.) The problem with the request was that Carbon's time to object to discharge or extend the deadline to object to discharge had already expired. Under the Bankruptcy Code and Rules, a creditor has 60 days from the *first date set* for the 341 meeting of creditors to file an adversary proceeding to determine the dischargeability of a debt. *See* FED. R. BANKR. P. 4004(a), 4007(c), 7001(6). The initial date scheduled for the meeting of creditors in Bressler's case was November 16, 2018. (Motion to Extend ¶ 2.) That means the deadline to

object was January 15, 2019 ("Objection Deadline").  Carbon was notified of the deadline in a
letter sent by the Court, which Carbon does not deny receiving.  ("Notice," ECF Doc. # 4 ¶ 7.)

Creditors may seek to extend the time to object beyond the 60-day deadline; however,
under Bankruptcy Rules 4004 and 4007, a request must be made to the court before the expiration
of the 60-day window.  *See* FED. R. BANKR. P. 4004(b)(1) ("On motion of any party in interest . .
. the court may for cause extend the time to object to discharge . . . .  [*T]he motion shall be filed
before the time has expired*." (emphasis added)); FED. R. BANKR. P. 4007(c) ("[A] complaint
shall be filed no later than 60 days after the first date set for the meeting of creditors under §
341(a) . . . .  [T]he court may for cause extend the time fixed under this subdivision.  *The motion
shall be filed before the time has expired*." (emphasis added)).  Carbon's Motion to Extend was
filed after the deadline.

Bressler objected to Carbon's request as untimely.  ("Objection to Motion to Extend,"
ECF Doc. # 62.)  In response, Carbon argued that the deadline to file a non-dischargeability
complaint expires 60 days after the 341 meeting actually takes place, rather than the date it was
originally scheduled.  ("Reply to Motion to Extend," ECF Doc. # 65, ¶¶ 5–10.)  Bressler's 341
meeting was adjourned, so it did not take place on November 16, 2018 as initially scheduled.
(Motion to Extend ¶¶ 2–3.)  The 341 meeting was held on December 7, 2018, meaning that if
Carbon's interpretation was correct, its request for an extension was timely.  (*Id*. ¶ 4.)  Carbon
also argued that Bressler's counsel orally agreed to stipulate to extend the deadline and that the
agreement was binding.  (Reply to Motion to Extend ¶¶ 11-19.)  Moreover, Carbon alleged it was
entitled to an extension on equitable grounds.  Carbon contended that the Debtor was equitably
estopped from arguing the deadline expired, and that the Court should equitably toll the deadline
due to misconduct by the Debtor and his counsel.  (*Id*. ¶¶ 20–39.)

### B.    The Court's Memorandum Opinion Denying Carbon's Request for an Extension

A hearing on Carbon's Motion to Extend was held February 25, 2019. (*See* "Transcript," ECF Doc. # 72.) The Court issued its *Memorandum Opinion and Order Denying Motion to Extend Time to Object to Discharge* on May 10, 2019. ("Prior Opinion," ECF Doc. # 103.) The Court held that the deadline to object to discharge runs from the first date scheduled for the 341 meeting, rather than when the meeting is actually held, and that Carbon's Motion to Extend was therefore untimely. (Prior Opinion at 8–11.) Additionally, the Court rejected Carbon's argument that the verbal agreement to extend the deadline between Carbon and Bressler's counsel was binding and enforceable because only the Court can extend the deadlines. (*Id.* at 11–12.) Lastly, the Court denied Carbon's request for equitable relief. The Court found equitable estoppel inapplicable because it was unreasonable for Carbon to rely on Bressler's counsel's verbal agreement to extend the deadline without court approval and that equitable tolling was inappropriate when Carbon had notice of the deadline to object but failed to do so timely. (*Id.*, at 12–19.)

Carbon filed a motion seeking reconsideration of the Prior Opinion. (ECF Doc. # 109.) The Court denied that motion. (ECF Doc. # 126.)

### C.    Carbon's Motion

Contemporaneous with moving for reconsideration, Carbon filed the motion at issue in this opinion. ("Motion," ECF Doc. # 111.) The Motion seeks an extension of time to file an objection to Bressler's discharge under section 727 of the Bankruptcy Code. (Motion at 1.) Bankruptcy Rule 4004(b)(2) permits a party to seek an extension of time to file a non-dischargeability complaint even after the deadline to object has passed. *See* FED. R. BANKR. P. 4004(b)(2). Under Rule 4004(b)(2), however, a party can only move to extend the deadline if

the proposed objection is based on facts learned *after* the time to object has expired and if those facts would provide a basis for denying a discharge under section 727(d) of the Code. If the moving party learns new facts, it must promptly move to extend the time to object. *Id.*

Carbon provides the following reasons why it is now entitled to an extension: First, Carbon alleges that the debtor "substantially delayed the discovery process[,]" by objecting to Carbon's Rule 2004 discovery requests, including requests to examine Bressler and others. (Motion ¶ 19.) The motion seeking the discovery was filed on December 19, 2018, Bressler's objection to the discovery was filed on December 27, 2018, and the Court issued an order compelling the discovery on February 14, 2019. Bressler still has not fully complied with the order, according to Carbon. (*Id.* ¶¶ 17–20.)

Next, Carbon alleges Bressler failed to disclose his employment with Microsoft or a $50,000 stock award from Microsoft on his Schedules of Assets and Liabilities ("SOAL") and Statement of Financial Affairs ("SOFA"). Carbon alleges it only learned about the stock award on April 11, 2019, after the Objection Deadline. (*Id.* ¶¶ 21–27.)

Third, Carbon accuses Bressler of failing to disclose a Santander checking account titled solely in his name. (*Id.* ¶ 28.) Moreover, Carbon alleges Bressler did not disclose that $1,165,000 was transferred from the Santander account on June 8, 2017 for the purchase of property in East Hampton. (*Id.* ¶ 30; *see also* n.2, *infra*.) Carbon states that neither the account nor transaction were disclosed in Bressler's SOAL or SOFA, and that Carbon did not discover them until Bressler's wife made supplemental production of documents on April 12, 2019. (*Id.* ¶¶ 31–32.)

Fourth, Carbon argues that Bressler spoliated evidence in the arbitration proceeding by deleting files on his laptop computer in violation of the arbitrator's and a district court's orders.

Bressler was sanctioned by the arbitrator as a result.  The spoliation occurred after the deadline to object had passed.  (*Id.* ¶¶ 33–36.)

Fifth, Carbon alleges Bressler has a beneficial interest in a trust called 83 Spring Trust, which he failed to disclose in the bankruptcy case.  Carbon supposedly learned of this alleged interest when Bressler's sister disclosed documents on March 8, 2019 and April 30, 2019.  (*Id.* ¶¶ 37–39.)

Lastly, after the Objection Deadline, Carbon served Bressler with a Rule 2004 subpoena on March 13, 2019, requiring him to appear for testimony and produce documents by April 9, 2019.  In response, that same day, Bressler's counsel asked to reschedule the testimony and indicated he would provide alternative dates.  Carbon alleges Bressler's counsel never provided alternative dates.  When Carbon's counsel followed up on April 3, 2019, Bressler's counsel did not respond until April 29, 2019.  Documents were thereafter produced on May 13, 2019, after the Court issued its Opinion.  However, Carbon alleges Bressler still has not produced tax returns, real estate closing statements, credit card statements, and documents relating to various trusts.  Also, Bressler allegedly still has not appeared for oral testimony.  (*Id.* ¶¶ 40–49.)

Carbon alleges that if any of the previous facts "were identified after a discharge had been awarded to [Bressler], revocation [of the discharge] would be warranted."  (*Id.* ¶ 50.) Carbon accuses Bressler of "knowingly conceal[ing] assets . . . to prevent the Trustee from liquidating [Bressler's] interests[,] . . . knowingly destroy[ing] records in order to disclose [sic] his fraudulent actions[,] . . . [and] refus[ing] to obey the Court's Rule 2004 Order, by consistently refusing to present himself for testimony and turn over documents . . . ."  (*Id.*)

If Carbon's Motion is denied, it does not necessarily mean Bressler will receive a discharge.  The chapter 7 trustee ("Trustee") timely filed an adversary complaint, objecting to the

Bressler's discharge under section 727 of the Code.  (*See* "Trustee's Adversary Complaint,"

Case No: 19-01132, ECF Doc. # 1.)  To support its position that Bressler should not be entitled

to a discharge, the Trustee's Adversary Complaint identifies the same facts alleged by Carbon in

the Motion.  (*Id*. ¶¶ 15–26, 29–36, 41–47, 52–62.)  In addition, the Trustee cites three additional

facts why Bressler should not receive a discharge.  They are: (1) Bressler failed to disclose an

ownership interest in an entity called 1 South Wacker Holdings, LLC in his SOAL and SOFA

(*id*. ¶¶ 27–28); (2) less than a year before the Petition was filed, Bressler completed a financial

form for a bank, showing he individually and solely owned stocks and bonds valued at

$6,000,000, real estate worth $4,000,000, and retirement accounts worth $400,000, yet Bressler's

SOAL does not disclose his ownership interests and his SOFA does not disclose the disposition

of the assets (*id*. ¶¶ 38–43); and (3) Bressler's SOFA fails to disclose that a $50,000 payment to

his counsel in the bankruptcy case was made by 83 Spring Trust, rather than him personally (*id*.

¶¶ 48–51).

The Trustee's Adversary Complaint contains seven counts.  The Trustee alleges the Court

should deny Bressler a discharge under section 727(a)(4) for making false oaths or accounts, in

count one (*id*. ¶¶ 63–71); under section 727(a)(2)(B) for concealing property of the estate with

the intent to hinder, delay, or defraud creditors and the Trustee, in count two (*id*. ¶¶ 72–77);

under section 727(a)(2)(A) for fraudulent concealment and transfer of debtor's property within

one year before the filing of the Petition, in count three (*id*. ¶¶ 78–84); under section

727(a)(4)(D) for knowingly and fraudulently withholding books and records, in count four (*id*. ¶¶

85–92); under section 727(a)(3) for concealing, destroying, mutilating, falsifying, or failing to

keep or preserve any recorded information, books, documents, records, and papers, in count five

(*id*. ¶¶ 93–97); under section 727(a)(5) for failing to explain satisfactorily the loss or deficiency

of assets, in count six (*id.* ¶¶ 98–101); and under 727(a)(6) for refusing to produce documents

and information as required by a bankruptcy court order, in count seven (*id.* ¶¶ 102–05).

Bressler has yet to answer the Adversary Complaint.

Carbon annexed a proposed adversary complaint to the Motion. ("Proposed Adversary

Complaint," ECF Doc. # 111-3.) It largely mirrors the Trustee's Adversary Complaint. (*Id.*; *see*

*also* Motion ¶ 16 ("Carbon's [Proposed Adversary Complaint] will [seek] relief on substantially

the same grounds as specified in the [Trustee's Adversary Complaint].").) The primary

differences are that Carbon does not include any count relating to the concealment of the 83

Spring Close Trust, nor a count under section 727(a)(6) for failing to comply with the Rule 2004

subpoena.[1]

###    D.    Bressler's Objection

Bressler's Objection disputes many of the factual allegations in the Motion. First, it

alleges he did not knowingly conceal assets. Bressler alleges he was unaware he needed to

disclose the Microsoft stock award because it is restricted stock that is contingent on his continued

employment. (Objection ¶ 33.) Therefore, Bressler did not believe it was property of the estate;

however, "[h]aving learned that his estate may have an equitable interest in the value of the stock .

. . Debtor . . . amended his schedules to list [the] interest." (*Id.* ¶ 34.) In addition, Bressler alleges

that Carbon's counsel was made aware of the Microsoft stock award at the 341 meeting, as it was

discussed during Bressler's testimony. (*Id.* ¶¶ 35–36.)

Regarding the 83 Spring Close Trust, Bressler alleges he disclosed its existence in his

schedules; however, under the incorrect name. Bressler states unbeknownst to him, the name of

---

[1]    Carbon's Proposed Adversary Complaint was drafted before the Court issued the Prior Opinion. It notes
that its Motion to Extend is *sub judice*. The Proposed Adversary Complaint includes causes of action under sections
727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4), (a)(4)(D), and (a)(5).

the trust was changed from Jane C. Bressler 2010-B Family Trust to 83 Spring Close Trust before

he completed the schedules.  The Jane C. Bressler 2010-B Family Trust is disclosed in his

schedules.  Bressler alleges Carbon's counsel was made aware of this error, as it was discussed

during the 341 meeting.  (*Id.* ¶ 37.)

Because Carbon was aware of any potential fraud involving the stock award and trust at

the 341 meeting, which was held before the Objection Deadline, Bressler argues that the alleged

concealment cannot form the basis for a late extension under Rule 4004(b)(2).  (*Id.* ¶ 39.)

Next, Bressler alleges the concealment of the Santander account by Bressler was

inadvertent and lacking in fraudulent intent; therefore, it cannot form a basis to deny a discharge

under Rule 4004(b)(2).  Bressler asserts that "the account had been inactive for over a year and

had a nominal balance as of the Petition Date (under $10.00)."  (*Id.* ¶ 44.)  Bressler states the *de*

*minimis* value is indicative of an absence of fraudulent intent.  (*Id.* ¶ 45–46.)  Moreover, regarding

the alleged $1.165 million transferred out of the account in June 2017, Bressler claims that was

the result of a "clerical error" and that the bank/or trustee inadvertently remitted the purchase

funds to his personal account instead of the account for 83 Spring Close Trust, which was the

purchaser of the property.[2]  (*Id.* ¶ 47.)  Bressler claims instead of wiring the money back, he

"simply remitted the funds to the seller on behalf of the Spring Close Trust in order to facilitate a

---

[2]     The Trustee also filed an adversary complaint against Amy Bressler, as trustee of the 83 Spring Close
Trust, relating to the alleged transfers from the Santander account.  (Case No. 19-01127, ECF Doc. # 1.)  The funds
allegedly were used to purchase a home in East Hampton that Amy Bressler, in her capacity as trustee, has title to.
The adversary complaint alleges, among other things, that Bressler is the sole holder of the Santander account, that
he failed to disclose the existence of the account in bankruptcy to avoid discovery that its funds were used to acquire
the property, that Bressler orchestrated Amy Bressler's acquisition of the property in the name of the trust for the
purpose of concealing it from creditors, and that Bressler and his relations utilize the property as if Bressler owned
it.  (*Id.* ¶¶ 12–33.)  The complaint alleges that Bressler has a legal and equitable interest in the transfers and
property, which are property of the estate.  (*Id.* ¶¶ 41–42.)  It seeks turnover of the property, the imposition of a
constructive trust and an equitable lien on the property, an award for unjust enrichment, and avoidance of the
transfers as fraudulent conveyances under New York Debtor and Creditor Law and the Bankruptcy Code.  (*Id.* ¶¶
44–79, 83–92.)

10

timely closing." (*Id.* ¶ 48.)  Therefore, he denies he had a legal or equitable interest in the funds transferred to him.  Bressler did not disclose the transaction for that reason.  (*Id.* ¶ 50.)

Third, Bressler denies being dilatory in response to the Rule 2004 subpoena.  Bressler states he has produced over 1,400 documents and "adequately addressed all outstanding items." (*Id.* ¶ 53.)  Furthermore, Bressler alleges recalcitrance alone is not a reason to deny a discharge but that Carbon must show bad faith, which it cannot do.  (*Id.* ¶¶ 53–55.)

Fourth, Bressler denies that sanctions in a concurrent arbitration proceeding can form the basis for a denial of a discharge under section 727.  (*Id.* ¶¶ 56–59.)

And last, Bressler argues Carbon is not entitled to an extension because it did not exhibit diligence in investigating Bressler's financial affairs prior to the deadline, despite being suspicious of Bressler from the start.  (*Id.* ¶¶ 60–63.)

### E.    Carbon's Reply

Carbon's reply alleges it did not have definitive knowledge of the Microsoft signing bonus prior to the deadline.  ("Reply," ECF Doc. # 128 ¶ 6.)  Bressler did not disclose Microsoft as his employer in his schedules and refused to disclose Microsoft's identity at the 341 meeting. Carbon states it did not know "what the bonus was, how much it was, or who it was from."  (*Id.*) It only learned this information after receiving responses to a Rule 2004 application, which were received after the Objection Deadline.  (*Id.*)

Carbon acknowledges that it was made aware of the 83 Spring Close Trust at the 341 meeting.  (*Id.* ¶ 7.)  However, it calls Bressler's supposed lack of knowledge of the name change at the time he filed his schedules "dubious."  (*Id.* ¶ 8.)

The Reply further alleges that the omission of the Santander checking account is material and was potentially done to conceal assets, including a property in the Hamptons. (*Id.* ¶¶ 11–12.)

Lastly, with respect to Bressler's intentional destruction of his laptop and related sanctions ruling from the arbitrator, Carbon states it was an "attempt to hide potentially damaging information that likely would have supported Carbon's claims that [Bressler] engaged in unauthorized, fraudulent trades which would have served as a basis for an objection to discharge." (*Id.* ¶ 15.) Carbon alleges the laptop also likely contained information related to assets of Bressler's estate. (*Id.*)

## II.  <u>LEGAL STANDARD</u>

Bankruptcy Rule 4004(b)(2) allows a party to request permission from the court to file a complaint objecting to a debtor's discharge, even after the original deadline to object, which is 60 days after the date first set for the creditor's 341 meeting, has passed. *See* FED. R. BANKR. P. 4004(b)(2). Rule 4004(b)(2) was added to the Bankruptcy Rules in 2011 to resolve the problem created when the basis for denying a debtor's discharge is first learned during the "gap period," which is the period of time between when the deadline to object expires and when the discharge is actually granted. 9 COLLIER ON BANKRUPTCY ¶ 4004.03 (16th ed. 2019). Under Rule 4004(c), a court must grant a discharge "forthwith" after the expiration of time for objecting to discharge. *See* FED. R. BANKR. P. 4004(c). However, due to normal ministerial delays, discharges are not always granted immediately. *See, e.g.*, *In re Emery*, 132 F.3d 892, 894 (2d Cir. 1998). In addition, in cases such as this one, a gap period exists when a creditor does not receive an extension of time to object to discharge under Rule 4004(b)(1), but another creditor or trustee does, delaying a debtor's discharge. The gap period arguably created an "unintended period of

12

immunity for fraudulent debtors," *id.*, that Rule 4004(b)(2) was designed to close.  *See* FED. R.

BANKR. P. 4004(b)(2) advisory committee's note to 2011 amendments; 9 COLLIER ON

BANKRUPTCY ¶ 4004.03 (16th 2019).

Rule 4004(b) provides that:

> (1) On Motion of any party in interest, after notice and hearing, the court may for cause extend the time to object to discharge. Except as provided in subdivision (b)(2), the motion shall be filed before the time has expired.

> (2) A motion to extend the time to object to discharge may be filed after the time for objection has expired and before discharge is granted if (A) the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d) of the Code, and (B) the movant did not have knowledge of those facts in time to permit an objection.  The motion shall be filed promptly after the movant discovers the facts on which the objection is based.

FED. R. BANKR. P. 4004(b)(2).  Therefore, to prevail on a motion under Rule 4004(b)(2), a party

must show that:

> (1)    cause exists to extend the time to object to discharge;

> (2)    the proposed objection to discharge is based on facts that, had they been discovered after discharge, would provide a basis for revocation under section 727(d) of the Code;

> (3)    the facts were not known prior to the time for objection had expired; and

> (4)    the motion seeking an extension was filed promptly after discovery of the facts.

*See In re Lusane*, 2013 WL 1728990, at *1 (Bankr. D.D.C. Apr. 22, 2013).  In addition, some

courts have held implicit in Rule 4004(b)(2) "is the requirement that a party seeking relief by

asserting that it first learned of the debtor's fraud during the gap period, demonstrate some

degree of diligence in investigating the debtor's financial affairs prior to the expiration of the

deadline for objecting to discharge . . . ." *421 Chestnut Partners, LP, et al. v. Aloia (In re Aloia)*, 496 B.R. 366, 385 (Bankr. E.D. Pa. 2013); *see also In re Lusane*, 2013 WL 1728990, at *2 (finding that determinations of cause under Rule 4004(b) includes consideration as to whether a requesting party exercised diligence).

### A.    Cause

"Determinations of cause under 4004(b) are left to the court's discretion." *In re Lusane*, 2013 WL 1728990, at *2; *see also In re Nowinski*, 291 B.R. 302, 306 (Bankr. S.D.N.Y. 2003); *In re Aloia*, 496 B.R. at 385; *In re Marsh*, 2012 WL 4482581, at *3 (Bankr. D. Mont. Sept. 26, 2012). Courts consider the following factors when determining whether cause exists under Rule 4004(b)(1): "(1) whether the creditor had sufficient notice of the deadline and the information to file an objection, (2) the complexity of the case, (3) whether the creditor exercised diligence,  (4) whether the debtor refused in bad faith to cooperate with the creditor, and (5) the possibility that proceedings pending in another forum will result in collateral estoppel on the relevant issues." *In re Nowinski*, 291 B.R. 305–06 (internal citations omitted).

Those factors are less impactful under 4004(b)(2), however.  That is because a movant under Rule 4004(b)(2) does not simply seek more time to decide whether or not to object to discharge or to investigate further (which is often the case under Rule 4004(b)(1)), but instead, seeks leave from the court to file an adversary complaint objecting to discharge, as is the case here.  Under Rule 4004(b)(2), a moving party must possess facts that form the basis for its complaint.  *See* FED. R. BANKR. P. 4004(b)(2)(A).  Therefore, the Court finds that meeting the requirements of Rule 4004(b)(2) establishes a *prima facie* case for cause.  The burden then shifts to the debtor to establish why cause does not exist, for example, because the moving party failed to investigate diligently.

Rule 4004(b)(2) spells out a test for whether cause exists during the gap period to permit an objection to discharge. If the test is met, the court has the discretion to grant an extension under Rule 4004(b)(2), and it should, absent any compelling reason to the contrary.

### B.    Section 727(d) Requirement of Rule 4004(b)(2)(A)

A Rule 4004(b)(2) motion requires a party to demonstrate that its extension request is based on facts that had they been learned after discharge, would form a basis to seek revocation under section 727(d). *See* FED. R. BANKR. P. 4004(b)(2)(A). Section 727(d) states, in part:

> (d) On request of the trustee, creditor, or the United States trustee, and after notice and hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
>
> (1) such discharge was obtained through fraud of the debtor, and the requesting party did not know of such fraud until after granting of such discharge;
>
> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;
>
> (3) the debtor has committed an act specified in subsection (a)(6) of this section[.]

11 U.S.C. § 727(d). [3]

"The Second Circuit has cautioned that revocation of discharge is an 'extreme penalty,' and [section 727] should be 'construed strictly against those who object to the debtor's discharge and liberally in favor of a bankrupt.'" *In re Moon*, 385 B.R. 541, 559 (Bankr. S.D.N.Y. 2008) (quoting *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir. 1996)).

---

[3]    Section 727(d) has a fourth subsection that deals with audits under 28 U.S.C. § 586(f). No such audit has been performed or requested in this case. Therefore, this subsection is not discussed in this opinion.

1.   Revocation under § 727(d)(1)

Under section 727(d)(1), a requesting party must establish actual fraud and that the fraud would provide grounds to deny a discharge, had it been timely known.  In other words, "the discharge would not have been granted but for the fraud alleged."  6 COLLIER ON BANKRUPTCY ¶ 727.17 (16th ed. 2019).

Moreover, "[t]he fraud required to be shown is fraud in fact, such as the intentional omission of assets from the debtor's schedules."  *Id.*  It must involve intentional wrong.  *In re Moon*, 385 B.R. at 559.  Fraudulent intent can be proved through an express admission or by circumstantial evidence, such as debtor's conduct under the circumstances or a pattern of reckless indifference or disregard for the truth.  *Id.*  In examining whether a debtor exhibits reckless disregard or indifference to the truth, a court may consider, among other factors:

> (a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's lack of financial sophistication as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies.

*Bordonaro v. Fido's Fences, Inc.*, 565 B.R. 222, 233 (E.D.N.Y. 2017).

"Since the question of actual fraud involves the parties' states of mind, it is not ordinarily proven by direct evidence, but rather, by inference from other facts proven . . . ."  *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 711 (2d Cir. 1991) (internal quotations and citations omitted).  The issue of fraudulent intent is purely a question of fact.  *Id.*  Badges of fraud include: (1) "the financial condition of the party sought to be charged both before and after the transaction in question," (2) "the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of a debt, onset of financial difficulties, or pendency or threat of suits by creditors," and (3) "the general chronology of the events and transactions under

16

inquiry[,]" among others.  *Adams v. Zembko (In re Zembko)*, 367 B.R. 253, 257 (Bankr. D. Conn. 2007).

### 2.  Revocation under § 727(d)(2)

Under section 727(d)(2), a discharge can be revoked if the debtor acquired property of the estate or became entitled to acquire property of the estate and knowingly and fraudulently failed to report it.  Additionally, a discharge can be revoked if a debtor fails to deliver or turnover estate property after a demand from the trustee.  *See* 11 U.S.C. § 727(d)(2).  "This provision imposes a duty on the debtor to report to the trustee any acquisitions of property after the filing of the petition."  6 COLLIER ON BANKRUPTCY ¶ 727.17 (16th ed. 2019).

Similar to section 727(d)(1), objecting parties need to prove fraudulent intent, meaning the failure to disclose or report was intentional.  "To find the requisite degree of fraudulent intent, the court must find the debtor knowingly intended to defraud the trustee, or engaged in such reckless behavior as to justify the finding of fraud."  *In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992).  Fraudulent intent can be inferred if a debtor "had access to omitted information and either knew that failure to disclose it would be seriously misleading or that the debtor acted so recklessly as to imply fraudulent intent."  6 COLLIER ON BANKRUPTCY ¶ 727.17 (16th ed. 2019).

### 3.  Revocation under § 727(d)(3)

Section 727(d)(3) incorporates section 727(a)(6) into section 727(d).  *See* 11 U.S.C. § 727(d)(3).  Under section 727(d)(3) of the Code, a debtor's discharge may be revoked if, after the granting of the discharge, "the debtor committed an act specified in subsection (a)(6) of this section."  11 U.S.C. § 727(d)(3).  That Section grants the debtor a discharge if "the debtor has refused, in the case, to obey a lawful order of the court, other than an order to respond to a material question or to testify[.]"  11 U.S.C. § 727(a)(6)(A).

Failure to obey an order of the court must be an intentional act of disobedience and not a mere accident, inadvertence, or inability. *See In re Eckert*, 375 B.R. 474, 480 (Bankr. N.D. Ill. 2007). A mere failure to comply with an order of the court is not sufficient to establish a revocation. *Id.* Rather, the party seeking revocation must demonstrate a willfulness on the part of the debtor. *Id.*

A debtor that refuses to obey a court order will be denied a discharge. *See In re Beeber*, 239 B.R. 13, 29 (Bankr. E.D.N.Y. 1999). The creditor asserting the non-dischargeability of a debt bears the burden of proof by a preponderance of the evidence. *In re Placeres*, 578 B.R. 505, 515 (Bankr. S.D.N.Y. 2017). In the absence of an explanation for the failure to comply, it can be inferred that the failure was a refusal to obey the court order. *In re Lusane*, 2013 WL 1728990, at *6. In *Lusane*, the court held that despite the creditor's failure to take steps to further enforce the Rule 2004 subpoena, there could be a refusal to comply with the subpoena if the debtor's obligations were clear and the debtor intentionally and willfully failed to comply. *Id.* at *8.

By its own terms, section 727(a)(6)(A) "applies to a Debtor's refusal to obey an order 'in the case' and 'of the court,' not 'in any case' and 'of any court.'" *In re Veino*, 2016 WL 6134806, at *1 (Bankr. D.N.H. Oct. 19, 2016) (allegation that a debtor failed to obey orders of a state court and arbitrator); *see also Jackson v. Jackson (In re Jackson)*, 548 B.R. 353, 386 (Bankr. N.D. Ga. 2016) (allegation that a debtor refused to comply with a district court order). Thus, to establish grounds for denial of discharge under this subsection, the creditor must demonstrate that the debtor refused to obey a lawful order of the bankruptcy court in which the case is proceeding. However, some courts have denied discharge based on the failure to obey a court order from a different bankruptcy court in a separate proceeding. *See, e.g., In re Barman*,

237 B.R. 342, 352 (Bankr. E.D. Mich. 1999); *In re Sharpe*, 305 B.R. 571, 577 (Bankr. M.D. Fla. 2003).

### C.    Knowledge of Facts and Promptness Requirements of Rule 4004(b)(2)(B)

The facts forming the basis for an objection to discharge must have been learned after the deadline to object had expired. *See* FED. R. BANKR. P. 4004(b)(2)(B). There is a similar requirement for revocation under section 727(d)(1). Under section 727(d)(1), a party must not have known of the *fraud* until after the discharge. *See* 11 U.S.C. § 727(d)(1). Courts have interpreted that subsection to mean that a moving party had no actual knowledge of the fraud and also no knowledge of facts that indicate a *possible* fraud prior to discharge. *See Mid-Tech Consulting, Inc. v. Swendra*, 938 F.2d 885, 888 (8th Cir. 1991) (stating that a majority of courts, including bankruptcy courts in the Southern District of New York, have held that notice of a possible fraud prior to discharge is sufficient to deny a request to revoke a discharge). If a party was put on notice of a possible fraud prior to discharge, it cannot seek to revoke the discharge under section 727(d)(1). *Id.*

It follows that, like section 727(d)(1), if a moving party before the objection deadline has no knowledge of possible fraud, no notice of possible failure to report or turnover estate property, or no notice of possible intentional disobedience of a court order, a court may grant an extension under Rule 4004(b)(2). *See, e.g.*, *In re Mauz*, 513 B.R. 273, 281–82 (Bankr. M.D. Pa. 2014) (denying a creditor's request to extend the deadline to object under Rule 4004(b)(2) when it was based on facts learned at a section 341 meeting held prior to the objection bar date). Additionally, once a party acquires knowledge of facts, it must move to extend the deadline promptly. *See* FED. R. BANKR. P. 4004(b)(2)(B) ("The motion shall be filed promptly after the movant discovers the facts on which the objection is based.").

19

## III.    DISCUSSION

Turning to the facts in the Motion, the Court finds that cause exists under Rule 4004(b)(2)

to permit Carbon to file an objection to discharge complaint based on some of the facts alleged in

its Motion but not others.  Therefore, the Motion is **GRANTED IN PART** and **DENIED IN**

**PART**.  In granting parts of the Motion, the Court does not conclude that the facts alleged by

Carbon are true or that Bressler will be denied a discharge as a result.  Those facts will bear out in

discovery and at trial, if necessary.  Rather, the Court today simply concludes that cause exists to

extend the deadline for Carbon to file an objection to discharge complaint, based on newly

discovered facts.

### A.    Failure to Disclose Microsoft Signing Bonus

Carbon alleges that Bressler received a signing bonus of $50,000 in stock when he was

hired by Microsoft in July 27, 2018.  (Motion ¶ 24.)  Carbon further alleges that Bressler failed

to disclose the receipt of the bonus on his SOAL or SOFA and that it did not learn of the

existence of the bonus until April 11, 2019, after the Objection Deadline.  (*Id*. ¶ 27.)  Therefore,

Carbon alleges Bressler fraudulently concealed assets.

In response, Bressler alleges he did not intentionally conceal the stock award, rather he

did not think it needed to be disclosed because the award is contingent on his continued

employment and none of the shares vested before his Petition.  (Objection ¶¶ 33–34.)  Bressler's

contention is supported by an affidavit.  ("Bressler Affidavit," ECF Doc. # 125 ¶ 3.)  Bressler

declares that when he learned of his misunderstanding, he amended his schedules to disclose his

interest in the stock.  (Bressler Affidavit ¶ 3; Objection ¶ 34.)  That was done on May 24, 2019,

after this Motion was filed.  (ECF Doc. # 115.)

Moreover, Bressler alleges Carbon received notice of the stock award during the 341

hearing, which occurred on December 7, 2019, before the Objection Deadline. Bressler cites to a

portion of the meeting in which he reveals there can be a bonus or commission element to his

current employment. ("341 Transcript," ECF Doc. # 125-Attachment 1, at 6–7; Objection ¶ 32.)

Because Carbon had notice of the alleged fraud before the Objection Deadline, Bressler argues it

cannot form a basis for an extension under Rule 4004(b)(2).

There is sufficient evidence to conclude that Bressler fraudulently concealed the signing

bonus by not disclosing it on his SOAL or SOFA, which is grounds for revocation of a discharge

under 727(d)(1). Bressler denies the omission was intentional. Fraudulent intent would have to

be shown by circumstantial evidence. Because Bressler (1) failed to disclose the identity of

Microsoft as his employer on his Petition; (2) failed to reveal the identity of Microsoft as his

employer during questioning at the 341 meeting; (3) objected to the propounding of Rule 2004

discovery on Microsoft; (4) delayed filing his schedules by approximately one month; and (5)

made other supposedly "accidental" omissions on his SOAL and SOFA, it can be inferred that

the omission was intentional and for the purpose of concealing the stock award, rather than an

accident. Moreover, Bressler's credibility could be called into question based on the arbitrator's

finding that he spoliated evidence by deleting files on his computer, which is a dishonest act, and

based on the recently confirmed $16 million arbtiration award finding that Bressler breached his

fiduciary duties and committed actionable fraud, and that his conduct was willful and "without

remorse." Therefore, Bressler's claim of mistake may not carry much weight.

The more difficult inquiry is whether Carbon had notice of the stock award prior to the

Objection Deadline. Carbon's counsel submitted a declaration indicating "Carbon did not

definitively learn of the Debtor's Microsoft Stock Award until on or about April 11, 2019, . . .

after the Objection Deadline had passed."  ("Klestadt Declaration," ECF Doc. # 139 ¶ 10.)  As

stated above, however, definitive knowledge is not needed, rather an extension request can be

denied if a party had notice of the allegedly fraudulent conduct prior to the objection deadline.

In this instance, the Court finds Carbon did not have notice before the Objection deadline.

Bressler only stated he could be awarded a bonus in his current position but did not testify as to

the nature of the bonus, its source, or when he became entitled to it.  Carbon did not know if the

bonus was earned prepetition and therefore property of the estate that was required to be

disclosed by Bressler.  Bressler should not be rewarded for his obstructionist tactics in refusing

to answer valid questions at a 341 meeting.  Furthermore, Carbon's alleged inquiry notice is

undermined by the fact that Bressler objected to Carbon's Rule 2004 discovery request to

Microsoft and has not appeared yet at a deposition, further delaying Carbon's ability to discover

the alleged fraud.  Therefore, the Court concludes that cause exists to extend the deadline to

permit Carbon to file an objection to discharge complaint based on Bressler's alleged omission

of the Microsoft stock award.  That portion of the Motion is **GRANTED**.

### B.    Failure to Disclose Beneficial Interest in the 83 Spring Close Trust

Next, Carbon alleges that Bressler failed to disclose a beneficial interest in a trust called

83 Spring Close Trust in his SOAL or SOFA.  Carbon alleges it did not learn of this interest until

Bressler's sister, the trustee of the 83 Spring Close Trust, produced documents on March 8,

2019.  (Motion ¶¶ 37–38.)  Carbon alleges Bressler fraudulently concealed his beneficial interest.

(Motion ¶ 39.)

Bressler denies intentionally concealing the trust.  (Objection ¶¶ 35-37.)  He asserts that

the name of the trust was changed in July 2017 from the Jane C. Bressler 2010-B Family Trust to

83 Spring Close Trust.  (*Id.* ¶ 37.)  Bressler declares he was "confused" about the name at the

time he filed his schedules (Bressler Affidavit ¶ 4), although he did disclose the Jane C. Bressler

2010-B Family Trust in his SOAL.  ("Schedule A/B: Property," ECF Doc. # 16 ¶ 25.)

Therefore, there was no fraudulent intent, according to Bressler.

Further, Bressler alleges he revealed the mistake at the 341 meeting.  (Objection ¶ 36.)

Bressler cites to a portion of the 341 meeting transcript in which Carbon's counsel asked about

the 83 Spring Close Trust, which Bressler then identified as the Jane C. Bressler 2010-B Family

Trust.  (341 Transcript at 29.)  Therefore, Carbon had notice of the alleged fraud prior to the

Objection Deadline.

The Court need not reach the issue of fraudulent intent.  In the Klesdtadt Declaration,

Carbon's counsel denies knowledge of the existence of the 83 Spring Close Trust before the

Objection Deadline.  (Klestadt Declaration ¶ 15.)  That statement, however, is contradicted in the

same declaration where Carbon's counsel also states that the 83 Spring Close Trust was

discussed at the 341 meeting.  (*Id*. ¶ 6 ("One of the parties . . . to subpoena was the Jane C.

Bressler 2010-B family Trust, which *according to the Debtor's Section 341 Meeting testimony is

the 83 Spring Close Trust*.") (emphasis added).)  The 341 meeting was held December 7, 2018,

prior to the January 15, 2019 Objection Deadline.  Therefore, Carbon had notice of Bressler's

alleged fraud relating to the omission of the 83 Spring Close Trust prior to the Objection

Deadline.  Accordingly, that part of the Motion is **DENIED**.

### C.    Failure to Disclose Santander Checking Account

Carbon argues Bressler is not entitled to a discharge because he failed to disclose a

Santander checking account titled solely in his name.  (Motion ¶¶ 28–29.)  Carbon also alleges

that Bressler transferred $1.165 million out of the account in June 2017, and failed to disclose

that transfer in his SOFA.  (*Id*. ¶¶ 30–31.)  The transfer is currently the subject of an avoidance

action filed by the Trustee.  (Case No. 19-01127, ECF Doc. # 1.)  Carbon alleges it did not become aware of the Santander account or transfer until it received supplemental production from Bressler's wife on April 12, 2019.  (Motion ¶ 32.)

Bressler does not deny that he failed to disclose the existence of the Santander account. Rather, he claims the omission was inadvertent.  (Objection ¶ 44.)  Bressler declares that he believed "only active accounts had to be listed and . . . the account had been inactive for over a year and had a nominal balance [as of the Petition]."  (Bressler Affidavit ¶ 5.)  Bressler alleges there is a materiality element of Rule 4004(b)(2) and that the *de minimis* value of the account vitiates his fraudulent intent.  (Objection ¶¶ 44–46.)

With respect to the transfer, Bressler alleges that he had no legal or equitable interest in the funds and that they were only transferred to him due to a clerical error.  (Objection ¶ 47.) Bressler states that the funds were used by the 83 Spring Close Trust to purchase real estate.  He indicates that Northern Trust transferred the funds to his personal account instead of the account for the trust, and Bressler only remitted the funds to the seller to facilitate the closing.  (*Id.* ¶¶ 47–48.)

Bressler does not explain the origins of the money at Northern Trust.  It is unclear who the accountholder was that transferred the money.  It could be 83 Spring Close Trust, but that is unclear from the record, and Bressler himself is an accountholder at Northern Trust.  (Schedule A/B: Property ¶ 21.)  It is also unclear why the clerical mistake occurred.

Bressler again claims there is no fraudulent intent.  The circumstantial evidence indicates otherwise.  The non-disclosure of the account appears to be material when considering $1.165 million was transferred out of it within two years of the filing of the Petition.  While Bressler claims the transfer was the result of a clerical mistake, he has provided no concrete evidence,

other than his affidavit, to support that position.  The Trustee, however, filed an adversary

complaint alleging the transfer was a fraudulent conveyance.

Moreover, this is the third supposed mistake involving failure to disclose assets and

Bressler has a history of fraud.  His denial may not be credible.  When considering the totality of

the circumstances, there is a plausible claim that Bressler intentionally concealed the account and

transfer.  There was no notice of the account or transfer prior to the Objection Deadline, the

motion has been filed promptly (approximately a month after discovery of the transfer), and

Carbon acted diligently in investigating Bressler's financial affairs.  Thus, the portion of the

Motion seeking an extension for Bressler's allegedly fraudulent concealment of the Santander

account and related transfer is **GRANTED**.

### D.        Failure to Comply with Arbitration Order; Destruction of Laptop

Carbon alleges Bressler should be denied a discharge because, during the gap period, he

violated discovery orders in the arbitration proceeding as well as an injunctive order of an

Oklahoma state court.  Bressler was ordered to produce his laptop computer in the arbitration.

("Ruling on Carbon's Motion for Sanctions," ECF Doc. # 85-2, ¶ 11.a.)  The arbitrator found

that on March 3, 2019, prior to producing it, Bressler ran clean-up software on the laptop that

destroyed files.  (*Id*. ¶ 11.c.-d.)  Bressler also deleted his profile.  (*Id*. ¶ 11.e.)  Bressler was

sanctioned by the arbitrator as a result.  The arbitrator held that Bressler's conduct was

"intentional and in direct violation of Discovery Orders and the District Court Injunctive

Order[,]" which required him to preserve evidence.  (*Id*. ¶ 12.)

Bressler does not deny this dishonest conduct.  However, he states it does not support a

claim for relief.  (Objection ¶¶ 56–59.)

25

The Court does not believe that Bressler's violation of the orders of the arbitrator or of the Oklahoma state court requiring a turnover of his computer provides a basis for denying a discharge under section 727(a)(6). As previously explained, the violation must be of an order entered by a bankruptcy court. But to the extent Bressler's computer contained books and records from which his financial condition or business transactions could be ascertained, no court order requiring preservation or turnover of the computer was required for denial of a discharge under section 727(a)(3).

Under section 727(d)(1), a court may revoke a discharge if the discharge was obtained through fraud. *See* 11 U.S.C. § 727(d)(1). Courts have held that if a debtor commits an act described in section 727(a)(2), it is grounds for revocation of a discharge. *See*, *e.g.*, *In re Zembko*, 367 B.R. at 258. Section 727(a)(2) has two elements—an act to conceal property and fraudulent intent. *Id*. at 256.

The question is then whether Bressler intended to defraud creditors. If the laptop contained information regarding assets of Bressler's estate or evidence of Bressler concealing assets, then his intent very well could have been to defraud creditors. Without knowing what was deleted, it is unclear if that was the case. This may well raise issues about any presumptions or inferences that arise as a matter of law from spoliation. The Court need not decide that precise point at this time. The Court is satisfied that Carbon has put forth sufficient evidence to show that cause exists to grant an extension on account of Bressler's spoliation. There is no question of notice as the spoliation occurred on March 3, 2019, after the deadline to object had passed.

The fifth count of Carbon's Proposed Adversary Complaint includes the allegations concerning spoliation of the laptop. (Proposed Adversary Complaint ¶¶ 63–66.) Carbon alleges

in that count that Bressler committed an act described in section 727(a)(3), rather than (a)(2).

Here, as a result of spoliation, it appears that Bressler "concealed, destroyed, mutilated , . . , or

failed to keep or preserve any recorded information, including books, documents, records, and

papers, from which the debtor's financial condition or business transactions might be

ascertained," 11 U.S.C. § 727(a)(3), by wiping clean his laptop.  The exception to discharge

under 727(a)(3) contains no requirement of fraudulent intent.  But for a discharge to be revoked

under section 727(d)(1), and therefore for an extension to be granted under Rule 4004(b)(2),

fraudulent intent must be present.  Thus, for Carbon to deny Bressler a discharge because of

spoliation, it is going to have to satisfy the fraudulent intent requirement of section 727(d)(1),

even if the Trustee's claim under section 727(a)(3) can be established without having to meet the

same fraudulent intent standard.  Carbon needs to modify the draft complaint, if it will include

allegations regarding the laptop.

Therefore, the portion of the Motion seeking an extension of time to object to discharge

because of the spoliation is **GRANTED**.

### E.    Failure to Comply with Rule 2004 Subpoena

Lastly, Carbon alleges in the Motion that Bressler failed to comply with an order of this

court by not complying with a Rule 2004 subpoena.  Refusing to respond to a subpoena can form

the basis for a denial of discharge under section 727(a)(6)(A).  *See*, *e.g.*, *Smith v. Seferian*, 2011

WL 6753989, at *4 (N.D. Ill. Dec. 21, 2011) ("Granting permission to conduct Rule 2004

examinations is an order of the court capable of being willfully disobeyed, thus invoking §

727(d)(3)."); *see also In re Lusane*, 2013 WL 1728990 (noting numerous cases holding that

subpoenas are court orders that require compliance by recipient).  The refusal has to be willful

and intentional, however, for a discharge to be denied.  *See Pereira v. Gardner* (*In re Gardner*);

27

384 B.R. 654, 669–70 (Bankr. S.D.N.Y.) (recognizing inadvertent non-compliance as a defense

under section 727(a)(6)(A)).

The Court entered the Rule 2004 order on February 14, 2019. ("Rule 2004 Order," ECF

Doc. # 59.) A subpoena for Rule 2004 examination pursuant to the Rule 2004 Order was served

on Bressler's counsel, per an agreement, on March 13, 2019. (ECF Doc. # 111, Ex. D.) The

subpoena required Bressler to appear for testimony on April 9, 2019. (ECF Doc. # 111, Ex. E.)

Upon being served, Bressler's counsel sent an email to Carbon's counsel, telling him April 9th

was not a good date and that he would suggest alternative dates. (ECF Doc. # 111, Ex. F.)

Bressler's counsel never did, however. Carbon's counsel then sent a follow up email on April 3,

2019, inquiring into Bressler's availability for the weeks of April 15th and April 22nd. (ECF Doc.

# 111, Ex. G.) In response, Bressler's counsel sent an email on April 29, 2019 stating Bressler

was in the process of assembling documents and that a response, presumably to the subpoena,

would be provided in the next few days. The response did not address Bressler's outstanding

testimony. (ECF Doc. # 111, Ex. H.) Bressler thereafter produced documents on May 13, 2019,

(ECF Doc. # 111, Ex. I); however, Carbon argues the responses are incomplete and that Bressler

still has not produced tax returns, real estate closing statements, credit card statements, and

documents relating to various trusts. (Motion ¶ 49.) In addition, Carbon alleges Bressler has

still not appeared for oral testimony. (*Id*. ¶ 49.)

Bressler denies being "dilatory in any way with respect to the Rule 2004 subpoena . . . ."

(Objection ¶ 52.) He claims he has produced over 1,400 pages of documents and adequately

addressed all outstanding issues. (*Id*.) Moreover, he alleges that Carbon has failed to show that

any recalcitrance was in bad faith or intentional. (Id. ¶ 53.) Therefore, Bressler asserts relief is

not warranted.

28

There is insufficient circumstantial evidence before the Court to infer that Bressler has been intentionally non-compliant with the subpoena. Carbon has only attempted twice to schedule Bressler's oral testimony. It has not sought help from the Court in scheduling it. Asking to reschedule then not responding to a single follow up email does not result in a strong inference that there was intentional non-compliance. Additionally, there is no evidence that Bressler's counsel made Bressler aware of the follow up request.

With respect to the production of documents, Bressler allegedly still has not produced all items requested, including tax returns and credit card statements. His response to the request for documents contains objections to some of the requests. (ECF Doc. # 125, Ex. C.) The Court is unclear as to how well taken the objections are, but Carbon has not sought any relief from the Court, such as an order to compel. Denial of a discharge is a harsh penalty and the Court is cautious not to deny a discharge simply because parties are involved in a discovery dispute. Because Carbon has not put forth facts showing that Bressler has been willfully noncompliant with the subpoena, the Court finds that cause does not exist for an extension of time to object to discharge on that basis. That portion of the Motion is **DENIED**. If it turns out, however, that Bressler's response to the subpoena was frivolous and resulted in him not producing evidence showing he concealed assets, that may be circumstantial evidence of fraudulent intent involving the other facts alleged in the Motion.

### F.    Failure to Disclose Interest in 1 South Wacker Holdings LLC

Although not addressed directly in the Motion, Carbon's Proposed Adversary Complaint also includes a count for failure to disclose Bressler's interest in an entity called 1 South Wacker Holdings LLC in his SOAL. (Proposed Adversary Complaint ¶¶ 46, 51.) On June 26, 2019, at the hearing on the Motion, Carbon's counsel represented to the Court that he and Carbon did not learn of this interest until after the Objection Deadline. Bressler's counsel accepted this

representation on the record and put forth no objection to Carbon's request for an extension

based on the newly learned information.  As such, Carbon's request to extend the time to file an

objection to discharge complaint with regard to the alleged non-disclosure of 1 South Wacker

Holdings LLC is **GRANTED**.  It should be noted that the Trustee's Adversary Complaint

contains a cause of action based on Bressler's alleged failure to disclose his 1 South Wacker

Holdings LLC interest (Trustee's Adversary Complaint ¶¶ 67, 74), so Bressler is not prejudiced

by this ruling.

### G.    Failure to Disclose Various Other Interests

Also not discussed in the Motion or the Klestadt Declaration was Bressler's alleged

concealment of interests in $6 million in stocks and bonds, $4 million in real estate, and

IRA/Keough accounts valued at $400,000 ("Various Other Interests").  Carbon's Proposed

Adversary Complaint contains two counts relating to those interests.  (Proposed Adversary

Complaint ¶¶ 53–62.)  Carbon's counsel stated at the June 26, 2019 hearing that he learned of

those interests when reviewing a personal financial statement completed by Bressler and that he

obtained the statement before the Objection Deadline.  Because the personal financial statement

was obtained by Carbon before the Objection Deadline, Carbon had notice of the alleged fraud

before the Objection Deadline, and therefore, Carbon does not meet Rule 4004(b)(2)(B)'s

requirement that it did not have knowledge of facts in time to permit an objection.  Thus,

Carbon's request for an extension based on the non-disclosure of the Various Other Interests is

**DENIED**.  If Carbon's counsel did not have enough information to file an objection to discharge

complaint in compliance with Rule 9011 before the Objection Deadline, the remedy was to seek

an extension of time under Rule 4004(b)(1).[4]

### H.    Carbon Has Exercised Diligence in Investigating Bressler

Since Carbon has established a *prima facie* case for cause, as to some of the facts alleged

in the Motion, the burden rests with Bressler to demonstrate why relief should not be granted.

Bressler argues Carbon should not be afforded relief because it did not diligently investigate his

financial affairs prior to the Objection Deadline.  (Objection ¶¶ 60–63.)  This argument lacks

merit.  First, Bressler has consistently been late in meeting his own obligations in the case,

including filing late schedules, adjourning the 341 meeting, and not timely responding to the

Rule 2004 discovery requests, which had the impact of delaying Carbon's investigation.  More

importantly, Carbon filed its Rule 2004 Application, seeking a considerable amount of discovery

from multiple parties, on December 19, 2018, less than two weeks after the 341 meeting,

approximately one month after Bressler tardily filed his initial schedules, and approximately one

month prior to the Objection Deadline.  ("Rule 2004 Application," ECF Doc. # 41.)  The timing

of the Rule 2004 Application refutes Bressler's allegation of a lack of diligence.

## IV.    CONCLUSION

For the reasons explained above, Carbon's Motion is **GRANTED IN PART** and

**DENIED IN PART**.  Carbon's Proposed Adversary Complaint contains counts under section

727(a) of the Code.  Carbon will need to revise its draft complaint to comply with this Court's

Rule 4004(b)(2) rulings as set forth above.  Carbon shall file its denial of discharge adversary

complaint within 30 days from the date of this opinion.  Of course, granting Carbon an extension

---

[4]    Bressler's alleged concealment of these assets is raised in the Trustee's denial of discharge adversary complaint so these allegations will be tested as a basis to deny Bressler's discharge regardless.

may prove to be academic, in any event, as the Trustee's Adversary Complaint includes

essentially the same allegations alleged in the Motion.  If the Trustee is successful in denying

Bressler's discharge under section 727, Carbon will get the same relief it is seeking in its

separate complaint.[5]

**IT IS SO ORDERED.**

Dated:    June 28, 2019
          New York, New York


_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge

---

[5]       The Court is likely to consolidate for pretrial and trial the denial of discharge adversary proceedings filed
by the Trustee and by Carbon.