**SILVERMANACAMPORA LLP**
Attorneys for Debtor
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman, Esq.
David J. Mahoney, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

                                                   Chapter 7
                                                 Case No.: 18-13098 (MG)

LEE ALEXANDER BRESSLER,

                        Debtor.
-------------------------------------------------------------------x

## LEE ALEXANDER BRESSLER'S OPPOSITION
## TO THE MOTION BY CARBON INVESTMENT PARTNERS, LLC
## AND CARBON MASTER FUND, L.P. FOR RELIEF FROM THE AUTOMATIC STAY

Lee Alexander Bressler (the "Debtor"), by his attorneys, SilvermanAcampora LLP, submits this memorandum in opposition to the motion (ECF Doc. No. 211) (the "Stay Motion") for relief from the Bankruptcy Code §362 automatic stay by Carbon Investment Partners, LLC and Carbon Master Fund, L.P. (collectively "Carbon").

### Preliminary Statement

The Stay Motion is a troubling mélange of supposition, innuendo, and misdirection, liberally seasoned with Carbon's now familiar sense of outrage. In its desire to bludgeon the Debtor and his family, Carbon ignores or obfuscates the facts and the law.

Although Carbon authenticated its judgment post-petition in or about August 2020 without relief from the automatic stay,[1] Carbon now seeks relief from the automatic stay to enforce that

---

[1] As **Exhibit 1** hereto demonstrates, on or about August 13, 2020, Carbon filed the documentation necessary to authenticate its Oklahoma judgment in the Supreme Court, New York County. As the last page of Exhibit 1 shows, the New York County Clerk filed and docketed Carbon's Oklahoma judgment on August 14, 2020. Pursuant to CPLR 5402(b), "[t]he clerk shall treat the foreign judgment in the same manner as a judgment of the supreme court of this

2549956v2

improperly domesticated judgment.[2] The Stay Motion, however, goes beyond the *limited* purpose of allowing Carbon to restrain the Debtor's ***post-petition*** assets and otherwise execute upon and enforce its judgment against the Debtor under the New York CPLR and under the direction and supervision of a New York Supreme Court[3] and seeks further and significantly more far-ranging relief. The Stay Motion must be denied.

Carbon confuses the Trustee's rights and obligations to administer the Debtor's estate with Carbon's substantially more limited rights as a "New York" judgment creditor. Accordingly, Carbon's request that it be granted relief from the automatic stay "to restrain, inspect and/or inventory, and execute its judgment against property of the estate, along with that of the Debtor" in the Debtor's home and in a property that is owned by a trust for the Debtor's benefit is not only legally and factually unsupported but is wildly misplaced. The flaws in Carbon's Stay Motion are legion.

---

state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of the supreme court of this state and may be enforced or satisfied in like manner." Under the CPLR 5203(a), a judgment is a lien against any of the Debtor's real property in New York County. *See Wilmington Sav. Fund Soc'y v. John*, 2020 NYLJ LEXIS 596, *7-8 (Sup. Ct. Westchester Co. 2020)("Once docketed, a judgment becomes a lien on the real property of the judgment debtor in the county of docketing."); *Flagstar Bank, FSB v. State of New York*, 114 AD3d 138 (2d Dept. 2013). As this Court noted in *In re Siegel*, 2014 Bankr. LEXIS 2942 (Bank. S.D.N.Y. 2014), a creditor may not take post-petition action to create a lien in real property because if the property belongs to the estate the creditor "is prevented from 'act[ing] to create, perfect, or enforce any lien against property of the estate' under §362(a)(4)." Here, Carbon has already violated the automatic stay.

[2] In addition to the stay violation, Carbon apparently did not mail notice to the Debtor within thirty (30) days of Carbon's initial filing as required by CPLR 5403.

[3] Carbon claims that it intends to issue restraining notices and information subpoenas to various trusts, banking institutions, entities, and individuals "in possession of non-exempt property in which the Debtor has an interest in an attempt to restrain the assets and to "obtain additional information regarding (1) the trusts of which the Debtor is a beneficiary, (2) the transfers he receives from the trusts, (3) the number and type of accounts he has at various banks, and (4) the amounts in such accounts."

2

**ARGUMENT**

**THE STAY MOTION SHOULD BE DENIED
BECAUSE THE TRUSTEE, NOT CARBON, IS
RESPONSIBLE FOR MARSHALING THE DEBTOR'S ASSETS**

It is well settled that the chapter 7 trustee is the representative of the bankruptcy estate. 11 U.S.C. §323(a). It is the chapter 7 trustee then, and only the chapter 7 trustee, who is responsible for the administration of the bankruptcy estate and all of the property interests that it comprises. *See generally In re Engman*, 395 B.R. 610 (Bankr. W.D. Mich. 2008). As early as 1939, the Court in *In re American Fidelity Corp.*, 28 F. Supp. 462, 471-72 (S.D. Cal. 1939) noted that the "function of the trustee in bankruptcy is to represent and act on behalf of all of the creditors in all matters involving the administration of the estate…." *See also In re Yale Express Sys., Inc.*, 1980 Bankr. LEXIS 5488, at *4 (Bankr. S.D.N.Y. 1980); *Pryor v. Town of Smithtown (In re Jadeco Constr. Corp.),* 606 B.R. 169, 187 (Bankr. E.D.N.Y. 2019) ("[T]he trustee in bankruptcy … represents all creditors …. As such, the trustee is not simply the successor in interest to the debtor; he represents the interest of all creditors of the debtor's bankruptcy estate….").

Quoting *In re Columbia Iron Works*, 142 F. 234, 237 (E.D. Mich. 1904), the *American Fidelity* court further stated that "[e]qually removed from the interference of the creditors is the action of the trustee, so long as that officer shall act with fidelity to his trust. He is chosen to represent all the creditors …. Subject to the control of the court and statutory limitations, the entire administration of the trust estate is in his hands. He cannot, therefore, yield his judgment to that of a majority of the creditors, merely because they are a majority, without a breach of his trust. To thus abdicate his duties is to make himself a mere passive trustee."

The *American Fidelity* court further found that it "would indeed be intolerable and make impossible the orderly administration of bankrupt estates, if creditors were allowed to intervene

3

and participate in matters of litigation of which the trustee has charge, under the supervision and control of this court. If the bars were let down, each creditor might conceivably appear separately to be heard; thus invoking a flood of proceedings which would engulf the time of the Federal court and make efficient functioning most difficult….." *See also U.S. v. Franklin National Bank*, 512 F.2d 245 (2d Cir. 1975); *In re Yale Express Sys., Inc.*, 1980 Bankr. LEXIS 5488, at *4.

Bankruptcy Code §704 enumerates the specific obligations of the chapter 7 trustee, which include marshaling assets of the debtor for distribution to creditors, objecting to the allowance of filed claims, filing tax returns as required under relevant non-bankruptcy statutes, and making a final report and filing with the Bankruptcy Court a final account of the administration of the estate. 11 U.S.C. § 704(a). *See In re Ditech Holding Corp.*, 606 B.R. 544, 608 (Bankr. S.D.N.Y. 2019); *In re Robert Plan Corp.*, 439 B.R. 29, 39 (Bankr. E.D.N.Y. 2010); *Pergament v. Varela (In re Varela)*, 530 B.R. 573, 584 (Bankr. E.D.N.Y. 2015); *In re USA United Fleet Inc.*, 496 B.R. 79, 83 (Bankr. E.D.N.Y. 2013) ("A Chapter 7 trustee is duty-bound to use the tools provided by the Bankruptcy Code to marshal and liquidate estate assets to achieve the highest possible return to creditors."); *Kramer v. Mahia (In re Khan)*, 488 B.R. 515, 535 (Bankr. E.D.N.Y. 2013).

Carbon does not contend that the Trustee in the Debtor's case is not doing his job and does not cite any authority under which Carbon could usurp the Trustee's role in this case. Carbon also does not provide the Court with any specific asset of significant value that the Debtor omitted that Carbon's physical examination of the Debtor's home might uncover. The pro-forma values for household and electronic items in the Debtor's bankruptcy schedules (which generally have *de minimus* liquidation value), is not by itself "evidence" that the assets that Carbon claims that the Debtor has concealed actually exist or are physically located in either home.[4]

---

[4] Carbon does not provide the Court or the Debtor with any legitimate basis for its "good faith belief that Debtor is hiding personal property in both of his residences," the nature and extent of that property, or its alleged value.

4

Moreover, Carbon's suggestion that a private citizen could be deputized and authorized to enter the Debtor's premises to "take an inventory" illustrates that its true purpose is to badger the Debtor and his family. In the exceedingly rare situations in which a trustee (not a creditor) has been granted the authority to enter a debtor's home, the Courts were provided with significantly more actual facts (not speculation) and were extremely cautious of intruding upon the debtor's Fourth Amendment rights.[5]

A "debtor does not forfeit all reasonable expectations of privacy upon filing a bankruptcy petition" but continues "to have some reasonable expectation of privacy following the filing of a bankruptcy petition." *Taunt v. Barman (In re Barman)*, 252 B.R. 403, 414 (Bankr. E.D. Mich. 2000). *See also In re Bodeker*, 2013 Bankr. LEXIS 2336, at *23-48 (Bankr. D. Mont. 2013). The relief that Carbon seeks "is reserved only for rare situations where a ***bankruptcy trustee*** presents the Court with specific, concrete, and compelling reasons to justify such a procedure as well as convinces the Court that doing so is a matter of substantial need." *Youngman v. Bursztyn (In re Bursztyn)*, 366 B.R. 353, 355-74 (Bankr. D.N.J. 2007) (emphasis supplied).

Unsurprisingly, in this case, in the absence of any facts concerning the alleged concealment of specific assets, the Trustee has not sought the extreme remedy of intruding upon the Debtor's privacy.[6] Similarly, New York CPLR Article 52, which governs the enforcement and collection

---

[5] The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[6] "In nearly all chapter 7 cases, the debtor's property is of inconsequential value to the estate due to the debtor's exemptions." *In re Barman*, 252 B.R. 407-20. "Even though under 11 U.S.C. § 541, the debtor's personal property is brought into the bankruptcy estate upon filing, in almost all cases this property reverts to the debtor through exemption very shortly after the case is filed. Thus, in these cases, the estate's interest in the property is quite limited, both in time and in function, and the debtor retains a substantial practical and beneficial interest in that property even while it is temporarily property of the estate." *Id.*

5

of money judgments,[7] does not contain any provision under which Carbon can intrude upon the Debtor's residence and "take an inventory." Carbon does not cite a single case in which a judgment creditor was permitted to enter the home of a judgment debtor.

In addition to the foregoing infirmities, Carbon glosses over the fact that the real property in East Hampton is owned by a trust and not by the Debtor. Carbon has not provided any authority which would allow the Trustee, much less a creditor, to enter property of a non-debtor trust in search of assets let alone without appropriate notice to that party.[8]

Similarly, the Debtor and his spouse, Shira Bressler, own their home as tenants by the entirety. Shira Bressler has a right to privacy and is a litigant, not a debtor, before this Court. Shira Bressler is also the subject of more litigation by Carbon in the United States District Court in which she moved to dismiss Carbon's complaint.[9] Carbon's attempt to intrude upon Shira Bressler's residence without notice to her or her counsel and for the purpose of ferreting out assets is tantamount to conducting discovery and judgment enforcement in a case in which issue has not been joined and proper discovery has not been served.[10] Bankruptcy proceedings and the

---

[7] *See generally Cruz v. TD Bank, N.A.*, 711 F.3d 261, 264 (2d Cir. 2013); *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 537, 911 N.E.2d 825, 883 N.Y.S.2d 763 (2009); *Itria Ventures LLC, v. Mitsubishi Motors N. Am., Inc.*, 2020 NY Slip Op 30053[U], *5 (Sup Ct. N.Y. Co. 2020).

[8] Carbon also fails to advise the Court that the East Hampton property was purchased by the trust fully furnished. Therefore, it is even more unlikely that Carbon's investigation would turn up significant post-petition personal property of the Debtor that Carbon could use to satisfy its judgment.

[9] *Carbon Investment Partners, LLC and Carbon Master Fund, L.P. v. Shira Bressler* is pending in the United States District Court for the Southern District of New York, Case No. 20-cv-03617-ER.

[10] Prejudgment discovery into assets from which a prospective judgment may be collected is generally not allowed in civil actions. *See In re Barnes*, 365 B.R. at 6-7 ("The proposition seems so obvious that it is not surprising that my limited research found no case law addressing the issue."). Bankruptcy Rule 2004 is a pre-litigation tool that cannot be utilized once an adversary proceeding or other action are pending *See In re Orion Healthcorp, Inc.*, 596 B.R. 228, 235-36 (Bankr. E.D.N.Y. 2019); *In re Enron Corp.*, 281 B.R. 836, 840-41 (Bankr. S.D.N.Y. 2002); *In re Barnes*, 365 B.R. 1, 6-7 (Bankr. D.D.C. 2007)*; In re The Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996).

automatic stay are designed to prevent the precise type of *in terrorem* harassment that Carbon now asks this Court to approve.

Finally, Carbon's outright assertion that it will execute on its judgment against ***property of the estate*** as well as the Debtor's property is wholly misplaced. Any property of the estate is exempt from Carbon's judgment enforcement and will be administered by the Trustee. Carbon's assertion that it intends to, and that it can, "execute" upon estate property is simply wrong. If Carbon can locate non-exempt, post-petition property belonging to the Debtor through the *proper exercise* of its rights as a judgment creditor under New York CPLR Article 52 in a New York Supreme Court, Carbon can execute upon *those* assets. Neither the assets of the Debtor's estate nor the Trustee's rights and obligations can be used by Carbon to satisfy or to enforce its judgment against the Debtor.

Carbon freely asserts that "the bankruptcy case is essentially a collection proceeding" and that "allowing Carbon to exercise self-help to collect on its judgment will … advance the [bankruptcy] proceedings rather than interfere with them." Stay Motion at p. 10. Contrary to Carbon's assertions, the Debtor's bankruptcy case is *not* a collection proceeding. The expansive discovery provisions of the Bankruptcy Code do not apply (and should not be applied) to collection cases. Carbon and the Debtor (and his family) have rights and obligations dictated by the New York CPLR in any collection proceeding and this Court should not intrude upon or attempt to modify or expand those rights and obligations. Moreover, "[n]owhere is the convenience of the creditors mentioned as a purpose of the Bankruptcy Code. In fact, the purpose of the code is to ensure an equitable distribution of Debtor's property among all creditors." *Siskin v. Complete Aircraft Servs., Inc. (In re Siskin)*, 231 B.R. 514, 520 (Bankr. E.D.N.Y. 1999). Simply because Carbon would somehow benefit from "self-help" is not a basis to lift the automatic stay and

certainly not a basis to allow Carbon to use the Bankruptcy Code and this Court to harass the Debtor and his family.

A court in this circuit should examine the factors set forth in *Sonnax Indus., Inc. v. Tri Component Products Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1286 (2d Cir. 1990), to determine whether relief from the automatic stay is warranted.[11] In this case, contrary to Carbon's assertions, absent the Debtor's consent to limited stay relief, the application of the *Sonnax* factors do not favor relief from the automatic stay. Based upon the pending litigation and Carbon's aggressive outlook, stay relief will not result in a partial or complete resolution of any outstanding issues (Factor 1). Based upon the Stay Motion, Carbon's activities will almost certainly interfere with the administration of the Debtor's bankruptcy case (Factor 2) especially since the adjudication of many of the issues involves multiple parties (including the Trustee)(Factor 6). Finally, the interests of judicial economy and the expeditious and economical resolution of litigation (Factor 10) and the balance of the harm to the Debtor and others (Factor 12) caused by the duplication of expense and effort weigh against lifting the stay.

Carbon cannot simply hijack the Trustee's right and obligation to discover and marshal estate assets simply to enforce its judgment. Carbon, as a judgment creditor, is no longer free to

---

[11] Those factors are (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *In re Cicale*, 2007 Bankr. LEXIS 2252, at *5-6 (Bankr. S.D.N.Y. 2007).

use the auspices of the Bankruptcy Court and Bankruptcy Rules to enforce its judgment under the guise of aiding the Trustee in the performance of his obligations.[12]

## Conclusion

For all of the foregoing reasons, the Debtor respectfully requests that the Stay Motion be denied in its entirety and that to the extent that Court is inclined to grant the Stay Motion that it granted limited relief permitting Carbon to only enforce its rights against post-petition property of the Debtor in the New York Supreme Court under the applicable provisions of CPLR Article 52 if and when its judgment is property domesticated.

Dated: Jericho, New York
      September 29, 2020

**SILVERMANACAMPORA LLP**
Attorneys for the Debtor

By: _s/Ronald J. Friedman_
Ronald J. Friedman
A Member of the Firm
100 Jericho Quadrangle - Suite 300
Jericho, New York 11753
(516) 479-6300

---

[12] Federal Rule of Civil Procedure 69 (made applicable by Bankruptcy Rule 7069), contemplates that discovery in an adversary proceeding to enforce a judgment shall be conducted under that rule, not Rule 2004. *See In re Barnes*, 365 B.R. at 6-7.